

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

**NICOLAS A. NOVY**

nicolas.novy@dechert.com
+1 215 994 2529 Direct
+1 215 994 2222 Fax

March 6, 2020

**<u>VIA HAND DELIVERY</u>**

Office of the Clerk of Court
Kate Barkman, Clerk of Court
United States District Court, Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Suite 2609
Philadelphia, Pennsylvania 19106-1797

Re: **Notice of Removal** – *The District Attorney of Bucks County v. Juul Labs, Inc., et al.*

Dear Ms. Barkman:

Please find enclosed for filing the following documents:

- Notice of Removal By Defendants Juul Labs, Inc. and Eonsmoke, LLC, in the above-captioned matter currently pending in the Bucks County Court of Common Pleas at Case No. 2020-00621;

- Civil Cover Sheet for the above-captioned matter;

- Two copies of the United States District Court Designation Form for the above-captioned matter;

- Case Management Track Designation Form for the above-captioned matter;

- A USB Drive containing each of the above documents; and

- A $400.00 check for the filing fee for the Notice of Removal.

Should you have any questions or need anything else, please do not hesitate to contact me at 215-994-2529. Thank you very much for your assistance with this matter.

Sincerely,

Nicolas A. Novy

US Austin Boston Charlotte Hartford Los Angeles New York Orange County Philadelphia Princeton San Francisco Silicon Valley
Washington DC   EUROPE Brussels Dublin Frankfurt London Luxembourg Moscow Munich Paris   ASIA Beijing Hong Kong



Office of the Clerk of Court
March 6, 2020
Page 2

cc:    Matthew D. Weintraub, Esq. (by e-mail and regular mail w/encl.)
Patrick Howard, Esq. (by e-mail and regular mail w/encl.)
Daniel E. Gustafson, Esq. (by e-mail w/ encl.)
Edward A. Wallace, Esq. (by e-mail w/ encl.)
Yvonne M. Flaherty, Esq. (by e-mail w/ encl.)
Anthony D. Shapiro, Esq. (by e-mail w/ encl.)
Todd J. O'Malley, Esq. (by e-mail w/ encl.)

#400   MSG

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE DISTRICT ATTORNEY OF BUCKS COUNTY, <br><br> Plaintiff, <br><br> vs. <br><br> JUUL LABS, INC., EONSMOKE, LLC, GULF MART, LEHAL ASSOCIATES, INC. D/B/A DELTA GAS, <br><br> Defendants. | ) ) ) ) ) Case No. ___20CV1324___ ) ) ) ) ) ) ) ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant JUUL Labs Inc. ("JLI") (the "Removing Defendant") and Eonsmoke LLC ("Eonsmoke") hereby remove this action from the Court of Common Pleas of Bucks County, Pennsylvania, where it is pending as Case No. 2020-00621, to the United States District Court for the Eastern District of Pennsylvania. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants JLI and Eonsmoke LLC, and the amount in controversy exceeds $75,000, exclusive of interests and costs. The citizenship of the remaining Defendants, Gulf mart, and Lehal Associates., d/b/a Delta Gas (together, the "Resident Defendants"), should be disregarded because they are not properly joined in this lawsuit. The Resident Defendants were fraudulently joined for the sole purpose of destroying diversity, and therefore the claims against them should be disregarded for purposes of determining diversity jurisdiction. Alternatively, Plaintiff's claims against the Resident Defendants are severable from this action under Federal Rule of Civil Procedure 21, which

presents an independent basis for disregarding the Resident Defendants' citizenship for diversity purposes. Grounds for removal are set forth in more detail as follows:

## I. BACKGROUND

### A. This Action.

1.      Plaintiff commenced this action on January 29, 2020, in the Court of Common Pleas of Bucks County, Pennsylvania, which is within the district and division to which this case is removed. As required under 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders that the Removing Defendant agreed to accept service of in the underlying state court action are attached as **Exhibit A**. In this civil action, Plaintiff alleges that JLI and Eonsmoke engaged in deceptive acts or practices while conducting trade or commerce in Pennsylvania and unreasonably interfered with the public's rights. *See* Compl. ¶ 2.

2.      Plaintiff seeks an unspecified amount of compensatory and punitive damages, as well as declaratory relief and injunctive relief from all Defendants. *See id.* Prayer for Relief. The Complaint alleges that JLI misrepresented and suppressed material facts regarding the content, concentration, and safety of JUUL products and engaged in false and deceptive advertising. *Id.* at ¶¶48-98. The Complaint further alleges that Eonsmoke capitalized on JLI's marketing campaigns by providing JUUL-compatible flavor pods. *Id.* at ¶ 137. On the basis of these allegations, Plaintiff asserts violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 –201-9.3 ("UTPCPL") and a cause of action for public nuisance. *Id.* at 1. To evade this Court's jurisdiction, however, the Complaint also attempts to assert the same claims against two Resident Defendants, entities which allegedly were found by the FDA to have sold JUUL products to minors in Bucks County, Pennsylvania.

2

There is no reasonable basis for those claims, and the Resident Defendants are therefore fraudulently joined.  Consequently, this Court should disregard the citizenship of the Resident Defendants in assessing its subject matter jurisdiction in this case.

3.      Alternatively, Plaintiff's claims against the Resident Defendants are severable from this action under Federal Rule of Civil Procedure 21, which presents an independent basis for disregarding the Resident Defendants' citizenship for diversity purposes.

4.      JLI agreed to accept service of the Summons and Complaint on February 6, 2020. This Notice is timely filed under 28 U.S.C. § 1446(b).

5.      The consent of the fraudulently joined Resident Defendants to this removal is not required.  *See id.* § 1446(b)(2)(A) ("[A]ll defendants who have been *properly joined* and served must join in or consent to the removal of the action.") (emphasis added); *see also Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815 (5th Cir. 1993) (holding that the removing defendant was not required to obtain consent for removal from the allegedly improperly joined defendant).

   **B.      Ongoing Multidistrict Proceedings.**

6.      On July 29, 2019, JLI moved the Judicial Panel on Multidistrict Litigation ("JPML") for an order transferring 10 federal cases presenting common questions of fact and law in six federal district courts and any subsequently filed tag-along cases, such as this case, to the U.S. District Court for the Northern District of California for coordination or consolidation (the "MDL Motion").  *In re: JUUL Labs, Inc. Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2913.

7.      October 2, 2019, the JPML issued a Transfer Order, which transferred lawsuits against the Removing Defendant concerning JUUL products to the Northern District of

3

California, for assignment to the Honorable William H. Orrick III, for coordinated and consolidated pretrial proceedings.  MDL 2913, Doc. 144.  Since then, the Clerk of the JPML has issued 23 Conditional Transfer Orders to transfer more than three hundred related actions to the Northern District of California.

8.      In view of the substantial factual overlap between this action and numerous actions that have already been transferred and consolidated, JLI intends to notify the JPML that this is a "tag-along" action that also should be transferred to the Northern District of California.

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Court of Common Pleas of Bucks County, Pennsylvania.

## II.  THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332.

10.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and the Removing Defendants.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

**A.      There Is Complete Diversity Between Plaintiff and the Removing Defendant.**

11.     Plaintiff, the District Attorney of Bucks County, Pennsylvania, is a citizen of Pennsylvania.  *See Moor v. County of Alameda*, 411 U.S. 693, 717-718 (1973) ("[A] political subdivision of a State, unless it is simply the arm or alter ego of the State, is a citizen of the State for diversity purposes.") (internal quotation marks omitted).

12.     Defendant JLI is a Delaware corporation with its principal place of business in California.  Compl. ¶ 17.

13.     Defendant Eonsmoke is a California corporation with its principal place of business in New Jersey.  *Id.* ¶ 18.

4

14.     The Complaint names the Resident Defendants, two local Bucks County retailers, as defendants.  *Id.* ¶¶ 19-20.  As discussed below, the Resident Defendants are fraudulently joined.  Accordingly, although both are alleged to be citizens of Pennsylvania, the Resident Defendants are disregarded for purposes of determining diversity of citizenship.  Alternatively, Plaintiff's claims against the Resident Defendants are severable under Federal Rule of Civil Procedure 21, such that the citizenship of the entities is irrelevant for diversity purposes.

15.     Accordingly, for purposes of diversity jurisdiction, there is complete diversity between Plaintiff and the only properly joined Defendant.

**B.     The Amount in Controversy Exceeds $75,000.**

16.     Under 28 U.S.C. § 1332, diversity subject matter jurisdiction requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interests and costs." This requirement is met.

17.     A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens,* 135 S. Ct. 547, 554 (2014).

18.     Plaintiff's Complaint does not include a specific demand for damages.  Upon a full and fair reading of the Complaint, however, the amount in controversy exceeds $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).

19.     Plaintiff's Complaint explicitly alleges that "monies demanded" for violations of the UTPCPL "are in excess of $50,000, exclusive of interests and costs."  Compl. ¶ 166. UTPCPL penalties are included in the amount-in-controversy analysis.  *Brunwasser v. Trans World Airlines, Inc.*, 541 F. Supp. 1338, 1348 (W.D. Pa. 1982).  Moreover, the Complaint

requests vast "compensatory damages and injunctive relief in the form of an abatement" for alleged costs relating to "ongoing youth education to contradict the false and misleading marketing JUUL has engaged in, in addition to increased costs for school monitoring and Bucks County employee health insurance and other health care costs incurred because of e-cigarette related disease." Compl. ¶ 175. Plaintiff's Complaint also seeks disgorgement of "all monies acquired or retained by Defendants as a result of their violations of the UTPCL." *Id.* Prayer for Relief. Finally, Plaintiff's Complaint explicitly seeks punitive damages (*id.*), which the Court "must consider when calculating the amount in controversy." *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007).

20.     These and other allegations compel the conclusion that the amount in controversy exceeds the jurisdictional minimum.

21.     Although the Removing Defendants do not concede that Plaintiff is entitled to damages or fees of any amount, a fair reading of the Complaint describes an amount in controversy exceeding $75,000.

### III.   THE RESIDENT DEFENDANTS ARE FRAUDULENTLY JOINED.

22.     The Complaint names two Pennsylvania defendants, Gulf Mart, and Delta Gas, in addition to the out-of-state Removing Defendants. The Resident Defendants, however, are fraudulently joined and their citizenship should be disregarded for the purpose of determining diversity jurisdiction. *See, e.g.*, *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) ("If the district court determines that the joinder was 'fraudulent' in this sense, the court can 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over

a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'") (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

23.     To establish fraudulent joinder of a non-diverse defendant, a removing defendant must demonstrate that "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Briscoe*, 448 F.3d at 216 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)).  When determining whether a party has been fraudulently joined, the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed . . . [and] assume as true all factual allegations of the complaint." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-852 (3d Cir. 1992).

24.     Here, the Resident Defendants have been fraudulently joined because there is no possibility Plaintiff can establish a claim against either entity.  In the "Factual Allegations" section of the Complaint, which sets out Plaintiff's allegations of misconduct and harm, the Complaint does not make a single reference to the Resident Defendants.  *See* Compl. ¶¶ 27-145. Instead, Plaintiff makes allegations regarding JLI's design of its vapor products, the adverse health effects of nicotine, JLI's alleged concealment of the addictive nature of its products, JLI's representations, marketing, and advertising, and Eonsmoke's sale of JUUL-compatible products. *See id*.  Despite the Resident Defendants' clear lack of connection to any of these issues, and the blatant lack of pleading even purporting to demonstrate such a connection, Plaintiff seeks to circumvent this Court's diversity jurisdiction by asserting claims against the Resident Defendants for violations of the UTPCPL and for public nuisance.  Plaintiff attempts to do so by including fleeting references to the Resident Defendants' sale of JUUL and Eonsmoke products,

7

*id.* at ¶ 7, and to the fact that these Defendants were issued warnings by the FDA more than 17

months before Plaintiff commenced this action. *Id.* at ¶¶22-23. For the reasons explained below,

these references to the Resident Defendants in the Complaint do not suffice to state a claim

against them under either putative cause of action.

> **A.      Plaintiff Does Not State a Claim Against the Resident Defendants Pursuant to the UTPCPL.**

25.      The UTPCPL prohibits "unfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce."  73 Pa. Stat. Ann. § 201-3.  Section

201-2(4) of the statute sets forth twenty-one practices defined as "unfair methods of

competition" or "unfair or deceptive acts or practices."  *Id*. § 201-2(4). "[I]n order to state a

claim under the UTPCPL, a plaintiff must allege that the defendant committed one of the unfair

or deceptive practices set forth in the statute."  *Com. ex rel. Corbett v. Peoples Benefit Servs.,*

*Inc.*, 895 A.2d 683, 692 (Pa. Commw. Ct. 2006).

26.      Plaintiff asserts a UTPCPL claim against the Resident Defendants for allegedly

engaging in "conduct constituting a deceptive act or practice declared unlawful under the

UTPCPL," and then lists a litany of alleged deceptive acts without specifying which allegations

are directed toward the Resident Defendants.  Compl. ¶ 151.  This alone should weigh in favor of

a finding of fraudulent joinder. "[L]umping all the defendants together in each claim and

providing no factual basis to distinguish their conduct" fails to give each defendant "'fair notice

of what the Plaintiffs' claim is and the ground upon which it rests.'"  *Atuahene v. City of*

*Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.,* 296

F.2d 847, 851 (2d Cir.1961)).  Moreover, the alleged misrepresentations, deceptions, and failures

to disclose are based on proprietary information concerning JUUL products that the Resident

Defendants never possessed, could not have reasonably known, and therefore could not have misrepresented.  *See, e.g.*, Compl. ¶¶ 57-68.  In addition, such alleged misrepresentations, deceptions, and failures to disclose pertain to activities, such as social media marketing, packaging, and JLI's website, in which the Resident Defendants had no involvement.  *See, e.g.*, *id*. ¶¶ 69-98.

27.     Plaintiff alleges the Resident Defendants have violated the UTPCPL merely by "[d]istributing or selling JUUL products to minors in Bucks County." *Id.* at ¶ 151.  Plaintiff attempts to plead a UTPCPL violation with the allegation that these sales were "unfair."" *Id.* at ¶ 159.  A conclusory allegation of unfairness is not enough to state a UTPCPL claim.

28.     Even under a broad interpretation of the UTPCPL's "unfair and deceptive" catch-all provision, a plaintiff must prove "deceptive conduct" to establish a UTPCPL violation.  *See, e.g.*, *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 153-54 (Pa. Super. Ct. 2012), *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011), *Wilson v. Parisi*, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008).  In turn, a "deceptive act" is "conduct that is likely to deceive a customer acting reasonably under similar circumstances" or "the act of intentionally giving a false impression." *Seldon v. Home Loan Servs. Inc.*, 647 F. Supp. 2d. 451, 469-70 (E.D. Pa. 2009).

29.     Accordingly, even taking as true the allegations that both Resident Defendants unlawfully sold tobacco products to minors, this assertion alone is completely insufficient to state a claim against the Resident Defendants.  Plaintiff must at least allege "deceptive conduct" on the part of the Resident Defendants, which Plaintiff has failed to do.  The mere act of selling tobacco products to minors, without more, is not "likely to deceive a customer" or likely to

"giv[e] a false impression."  *Id.*  Plaintiffs allege nothing that transforms this alleged conduct into something deceptive.

30.     When these summary allegations of unlawful sales to minors are properly excluded from the UTPCPL claim, the claim against the Resident Defendants must fail because Plaintiff's Complaint is entirely "devoid of allegations of the non-diverse Defendants' deceptive conduct."  *Filippello v. Transamerica Premier Life Ins. Co.*, 2018 WL 451639, at *3 (E.D. Pa. Jan. 16, 2018) (holding that non-diverse defendants were fraudulently joined where plaintiff's complaint failed to allege non-diverse defendants' deceptive conduct and thus there was "no possibility that a state court would find that the complaint states a cause of action for a UTPCPL violation") (internal quotation marks omitted).  As discussed above, Plaintiff's "Factual Allegations" section does not contain a single reference to the Resident Defendants, let alone an allegation of "deceptive" conduct on the part of the Resident Defendants in support of its UTPCPL claim.  *See* Compl. ¶¶ 25-131.  Because these allegations pertaining to the Resident Defendants' supposed violation of the UTPCPL are such that there is no "possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants," the Resident Defendants were fraudulently joined.  *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

   **B.     Plaintiff Does Not State a Claim Against the Resident Defendants for Public Nuisance.**

31.     The Complaint asserts a claim for public nuisance, alleging that, through the wrongful conduct pleaded in the Complaint, Defendants have interfered with the "public's right to be free from avoidable injury, disease, sickness and addictive substances hazardous to health." Compl. ¶¶ 156-157.  "A public nuisance is 'an unreasonable interference with a right common to

the general public.'"  *Philadelphia Elec. Co. v. Hercules, Inc*., 762 F.2d 303, 315 (3d Cir. 1985)

(quoting Restatement (Second) of Torts § 821B(1)).

32.     As a preliminary matter, it is unclear whether Plaintiff even intends to assert a

public nuisance claim against the Resident Defendants.  Unlike the UTPCPL claim, which at

least includes some allegations specific to the Resident Defendants,  Plaintiff's public nuisance

claim is absolutely "devoid of specific allegations" against the Resident Defendants and is

instead "filled with general statements levied against all defendants." *In re Diet Drugs*

*(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424

(E.D. Pa. 2002).  It is not clear from the face of the Complaint that Plaintiff intends to assert a

good-faith nuisance claim against the Resident Defendants, rather than merely JLI and

Eonsmoke.

33.     In any event, a public nuisance claim against the Resident Defendants fails for

two reasons.  First, the Resident Defendants' sales of tobacco products to minors do not

constitute a public nuisance because there is no interference with a "public right."  Pennsylvania

recognizes no public nuisance claim absent an unreasonable interference "with a right common

to the general public."  Restatement (Second) Of Torts § 821B (1979); *see Muehlieb v. City of*

*Philadelphia*, 574 A.2d 1208, 1211-1212 (Pa. Commw. Ct. 1990) (adopting § 821B).  Conduct

interferes with a "public" right only if its affects the whole community in general.  *See Feeley v.*

*Borough of Ridley Park*, 551 A.2d 373, 375 (Pa. Commw. Ct. 1988) (finding a public nuisance

based on an "inconvenience or troublesome offense that annoy[ed] the whole community in

general, and not merely some particular person").  Thus, when conduct affects only a narrow

class of people, it cannot constitute a public nuisance.  *See Greyhound Lines, Inc. v. Peter Pan*

11

*Bus Lines, Inc.*, 845 F. Supp. 295, 302 (E.D. Pa. 1994) (concluding that rowdy "hawkers" employed by competing bus line were not a public nuisance because they only annoyed Greyhound passengers); *see also Ricchiuti v. Home Depot, Inc.*, 412 F. Supp. 2d 456, 460 (E.D. Pa. 2005) (dismissing plaintiff's claim that a pothole in a parking lot used by the public was a public nuisance because it affects only a small segment of the community, not the community at large).

34.     The conduct attributed to the Resident Defendants—each allegedly being found by the FDA to have sold products to a minor on the FDA inspection date more than 17 months before Plaintiff filed this action—does not interfere with a "public right."  Instead, the persons affected by the Resident Defendants' alleged misconduct here are those minors who purchased tobacco products when they should have been denied such access.  Like *Greyhound Lines* or *Ricchiuti*, only a narrow class is affected, and thus no public right is implicated.

35.     Second, isolated sales by each Resident Defendant in violation of 18 Pa.C.S. §§ 6301, 6305 and 6306.1—which are the statutes Plaintiff gesture toward in its Complaint—are not enough to support a public nuisance claim.  Rather, courts consistently require more than sporadic acts of misconduct.  *See, e.g.*, *Cty. of Erie, New York v. Colgan Air, Inc.*, 711 F.3d 147, 152 (2d Cir. 2013) (holding that nuisance is "a conscious and deliberate act involving the idea of continuity or recurrence" and that "some degree of permanence is an essential element") (internal citations omitted); *Reese v. Wells*, 73 A.2d 899, 902 (D.C. 1950) ("[O]ne act of misconduct, though it causes discomfiture or inconvenience to others in the use and enjoyment of property, is not actionable as a nuisance."); *City of Atlanta v. Roberts*, 211 S.E.2d 615, 616 (Ga. Ct. App. 1974) ("A single isolated occurrence or act, which if regularly repeated would

12

constitute a nuisance, is not a nuisance until it is regularly repeated.") (internal citations omitted); *Breeding ex rel. Breeding v. Hensley*, 519 S.E.2d 369, 372 (Va. 1999) ("More than sporadic or isolated conditions must be shown[.]"); *H. Wayne Palmer & Assocs. v. Heldor Indus., Inc.*, 839 F. Supp. 770, 777 (D. Kan. 1993) ("[O]ne of the requisites of a nuisance is that it has been in existence for some period of time rather than being an isolated occurrence of a temporary nature."); *Ka v. City of Indianapolis*, 954 N.E.2d 974, 982 (Ind. Ct. App. 2011) ("Because the [Plaintiffs] have asserted a nuisance claim premised upon a single isolated event, the trial court did not err in granting summary judgment in favor of the City.").

36.     Here, all that is alleged is that a federal entity found each Resident Defendant to have sold JUUL products to minors in Bucks County more than 17 months before the commencement of this action.  Compl. ¶¶ 22-23.  These isolated events are simply not sufficient to make out a public nuisance claim.  While Plaintiff further alleges that "Eonsmoke's flavored pods were found stocked on the shelves of Defendant Delta Gas as recently as Friday, January 17, 2020," Compl. ¶ 7, it is telling that Plaintiff does not ever allege there were continuing sales *to minors*.

37.     No courts applying Pennsylvania law have allowed a public nuisance claim on similar grounds.  "[T]he lack of precedent implies the lack of a legal theory affording a plaintiff a right to relief, and is the very reason to dismiss this theory here."  *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 910 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002) (surveying Pennsylvania's public nuisance doctrine and refusing to expand it beyond its traditional contexts).  Because "[t]here is simply no legal support for the claim," it cannot be sustained.  *In re Genetically Modified Rice Litig.*, Nos. 4:06-md-1811, 4:07-cv-416, 2008 WL

13

80663, at *1 (E.D. Mo. Jan. 7, 2008) (holding that resident defendants were fraudulently joined where "[n]o Texas courts have allowed public nuisance claims on any remotely similar grounds, and plaintiffs have not identified any case in any court where a public nuisance claim has been founded upon a [the alleged right]").

*     *     *

38.     For these reasons, "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant[s]" and Plaintiff holds "no real intention in good faith to prosecute the action against the [Resident Defendants] or seek a joint judgment." *In re Briscoe*, 448 F.3d at 216.  Joinder was fraudulent, and the citizenship of the Resident Defendants may be disregarded for jurisdictional purposes.

## IV.  IN THE ALTERNATIVE, THE RESIDENT DEFENDANTS SHOULD BE SEVERED UNDER FED. R. CIV. P. 21.

39.     Alternatively, Plaintiff's claims against the Resident Defendants are severable from this action.  This presents an independent basis for disregarding the Resident Defendants' citizenship for diversity purposes.

40.     Federal courts, relying upon Fed. R. Civ. P. 21, routinely retain jurisdiction over cases where non-diverse defendants are neither necessary nor indispensable under Rule 19.  This is particularly true when, as here, the plaintiff can obtain full recovery from the defendant that remains in the federal case after removal, the plaintiff retains a remedy against the non-diverse defendant in state court, and overall judicial economy is served by removal.

41.     Rule 21 vests courts with the power "to allow a dispensable nondiverse party to be dropped at any time." *Aetna Life Ins. Co. v. Found. Surgery Affiliates, LLC*, 358 F. Supp. 3d 426, 436 (E.D. Pa. 2018) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832

14

(1989)).  Further, a court applying this rule may dismiss a dispensable party whose presence

spoils diversity jurisdiction.  *Id.*  As such, the Rule is viewed as "a grant of discretionary power

to the federal court to perfect its diversity jurisdiction" by dropping such parties, provided that

they are not indispensable to an action under Rule 19.  *Kirkland v. Legion Ins. Co.*, 343 F.3d

1135, 1142 (9th Cir. 2003) (internal quotation marks omitted)*; see also Payroll Mgmt., Inc. v.

Lexington Ins. Co.*, 815 F.3d 1293, 1298 n.8 (11th Cir. 2016) (stating that the Rule permits

district courts to drop dispensable non-diverse parties "when necessary to establish federal

subject-matter jurisdiction" (internal citations omitted)).

    42.    Applying these principles, courts within this Circuit have severed or dismissed

dispensable, non-diverse defendants under Rule 19, thereby preserving the Court's diversity

jurisdiction.  *See*, *e.g.*, *Aetna Life*, 358 F. Supp. 3d at 429-30; *Zambelli Fireworks Mfg. Co. v.

Wood*, 592 F.3d 412, 422 (3d Cir. 2010); *Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 786 (3d

Cir. 1993).

    43.    To determine whether the claims against a resident defendant should be severed, a

court first decides whether the party is "necessary" under Rule 19(a), *i.e.*, whether that

defendant's absence prevents the plaintiff from obtaining complete relief from the remaining

defendants.  *See Long v. Valley Forge Military Acad. Found.*, 2008 WL 5157508, at *6 (E.D. Pa.

Dec. 8, 2008) ("Where a party is not necessary, that party is 'by definition not indispensable to

the action.'") (quoting *Mallalieu-Golder Ins. Agency, Inc. v. Executive RiskIndem. Inc.*, 254

F.Supp.2d 521, 525 (M.D. Pa. 2003)); *Spring-Ford Area Sch. Dist. v. Genesis Ins. Co.*, 158 F.

Supp. 2d 476, 483 (E.D. Pa. 2001) ("Under Fed.R.Civ.P. 19, the threshold inquiry is whether the

party is 'necessary' to the proceedings.").  If (and only if) the resident defendant is necessary

under Rule 19(a), the court considers the indispensable factors outlined in Rule 19(b):  (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.  *Id.*; *Aetna Life*, 358 F. Supp. 3d at 438.

44.     Here, the Resident Defendants are not necessary parties because complete relief is available from the remaining parties.  Throughout the Complaint, Plaintiff alleges in conclusory fashion that all Defendants are liable under the UTPCPL and a theory of public nuisance.  As noted above, Plaintiff's "Factual Allegations" section does not contain a single reference to the Resident Defendants, let alone an allegation that the Resident Defendants engaged in "deceptive" conduct or created a public nuisance.  "[B]ecause none of the allegations in the Complaint are attributable only to [Resident Defendants]," compete relief is available without the Resident Defendants in the case.  *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 121 (S.D.N.Y. 2015); *see also Barrett v. Ambient Pressure Diving, Ltd.*, 235 F.R.D. 263, 271 (E.D. Pa. 2006) (holding that complete relief is available where nonjoinder of a defendant "does not foreclose a determination of whether the [remaining] defendants are liable").  Because the Resident Defendants are not necessary parties, the court may dismiss these entities from the present case to preserve its diversity jurisdiction.  *Long*, 2008 WL 5157508, at *6.

45.     Even if the Resident Defendants are deemed "necessary" under Rule 19(a), they are dispensable parties based upon a full consideration of the Rule 19(b) factors, and may therefore be dismissed under Rule 21.  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).

16

46.     First, judgment rendered in the Resident Defendants' absence would not prejudice Plaintiff.  The theory of liability against JLI depends on the design, manufacture, marketing, and promotion of JLI products.  *See* Compl. ¶¶ 27-128.  By contrast, to the extent any allegations against the Resident Defendants can be found in Plaintiff's Complaint, these concern only the apparent sale of JLI products to minors at two retail locations, but lack any further specificity.  Setting aside this lack of detail, the resolution of a claim against JLI would not necessarily resolve Plaintiff's claim against the Resident Defendants because the claims against the two differ.  *See*, *e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 706 (D. Md. 2015).  Whether the Resident Defendants are indeed liable for selling to minors is a claim that would not be affected by a decision regarding JLI's conduct.

47.     Second, Plaintiff retains an adequate remedy in state court if the Court dismisses the Resident Defendants from this action.  *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1015 (3d Cir. 1987).

48.     Third, failing to dismiss the Resident Defendants would prejudice the Removing Defendant.  As noted above, the Removing Defendant is now engaged in a consolidated litigation that includes over three hundred federal cases in the Northern District of California.  *See supra* ¶¶ 6-7.  Given the substantial factual overlap between this action and numerous actions that have already been approved for consolidation, it is very likely that this case will be transferred to the Northern District of California if it remains in federal court.  Transfer and coordination in these proceedings would (1) avoid substantial and duplicative discovery burdens, and (2) eliminate the risk of inconsistent pretrial rulings on discovery, dispositive motions to dismiss, class certification, summary judgment, and other pretrial matters.  By contrast, if the

17

Removing Defendant is forced to litigate this single dispute in the Pennsylvania Court of Common Pleas, it would not recognize the myriad of benefits from the consolidated litigation.

49.      Finally, under Rule 19, the Court must consider the interest in "complete, consistent, and efficient settlement of controversies."  *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968).  Here, dismissing the Resident Defendants and allowing Plaintiff's claim against the Removing Defendant to be resolved in the MDL in the Northern District of California would best serve the value of consistent and efficient settlement of controversies.  The parties will be able to resolve Plaintiff's claims and the Removing Defendants' defenses in a consistent and efficient manner in the MDL.

50.      Accordingly, the Resident Defendants are neither necessary nor indispensable under Rule 19, and Plaintiff's claims against these entities should be severed under Rule 21.  Doing so leaves complete diversity of citizenship, since Plaintiff is a citizen of Pennsylvania and the Removing Defendant is not, and the amount in controversy requirement is satisfied irrespective of whether the Resident Defendants are parties.  *See* 28 U.S.C. § 1332(a).

51.      The Removing Defendant reserves the right to amend or supplement this Notice of Removal.

18

**WHEREFORE**, Removing Defendant prays that the filing of the Notice of Removal, and the giving of written notice thereof to Plaintiff, and the filing of a copy of this Notice of Removal with the Clerk of the Court of Common Pleas of Bucks County, Pennsylvania, shall effect removal of said suit to this Court.

Respectfully submitted this 6th day of March 2020.

By:   */s/ Sozi Pedro Tulante*
Sozi Pedro Tulante
Will W. Sachse
Nicolas A. Novy

Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
215.994.2450
Sozi.tulante@dechert.com

*Attorneys for Defendant JUUL Labs, Inc.*

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a true and correct copy of the foregoing

is being served on the persons and in the manner indicated below:

### Electronic Mail & U. S. Postal Service, First Class Mail, Addressed As Follows:

Matthew D. Weintraub
Office of the District Attorney
100 N. Main Street
2nd Floor
Doylestown, PA 18901
*Attorney for Plaintiff*

Robert J. Mongeluzzi
Simon B. Paris
Patrick Howard
Charles J. Kocher
SALTZ MONGELUZZI BARRETT &
BENDESKY, P.C.
120 Gibralter Road, Ste. 218
Horsham, PA 19044
sparis@smbb.com
phoward@smbb.com
ckocher@smbb.com
*Attorney for Plaintiff*

Anthony D. Shapiro
HAGENS, BERMAN, SOBOL
SHAPIRO, LLP
1301 Second Avenue
Suite 200
Seattle, WA 98101
*Attorney for Plaintiff*

Todd J. O'Malley
O'MALLEY & LANGAN
201 Franklin Avenue
Scranton, PA 18503
*Attorney for Plaintiff*

Yvonne M. Flaherty
LOCKRIDGE, GRINDAL,
NAUEN, P.L.L.P
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2159
*Attorney for Plaintiff*

Edward A. Wallace
WEXLER WALLACE, LLP
55 W Monroe St
Suite 3300
Chicago, IL 60603
*Attorney for Plaintiff*

Daniel E. Gustafson
Amanda M. Williams
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite
2600
Minneapolis, MN 55402
*Attorney for Plaintiff*

DATED:  March 6, 2020

Nicolas A. Novy

20

**<u>Exhibit A</u>**

Case #2020-00621

| | |
|---|---|
| **Case Number** | 2020-00621 |
| **Matter Code** | |
| **Commencement Date** | 1/29/2020 9:30:31 AM |
| **Case Type** | COMPLAINT |
| **PFA Number** | |
| **Caption Plaintiff** | BUCKS COUNTY DISTRICT ATTORNEY |
| **Caption Defendant** | JUUL LABS INC |
| **Lis Pendens Indicator** | No |
| **Status** | 1 |
| **Judge** | DENISE M. BOWMAN |
| **Parcel Number** | |
| **Remarks** | COMPLAINT TORT NUISANCE MONEY DAMAGES with NOTICE TO DEFEND |
| **Sealed** | No |
| **Consolidated** | No |

## Plaintiffs

| Name | Address | Counsel | Notify | Sequence | ProSe |
|---|---|---|---|---|---|
| BUCKS COUNTY DISTRICT ATTORNEY | 100 N. MAIN STREET 2ND FLOOR DOYLESTOWN, PA 18901 UNITED STATES | Howard, Patrick | Yes | 1 | |

## Defendants

| Name | Address | Counsel | Notify | Sequence | ProSe |
|---|---|---|---|---|---|
| JUUL LABS INC | 560 20TH STREET SAN FRANCISCO, CA 94107 UNITED STATES | | Yes | 1 | |
| EONSMOKE LLC | 1500 MAIN AVE SUITE 2 CLIFTON, NJ 07011 UNITED STATES | | Yes | 2 | |
| GULF MART | 530 EAST BROAD STREET QUAKERTOWN, PA 18951 UNITED STATES | McCreesh, John James IV | Yes | 3 | |
| LEHAL ASSOCIATES INC (D/B/A DELTA GAS) | 288 OLD YORK ROAD WARMINSTER, PA 18974 UNITED STATES | | Yes | 4 | |

## Docket Entries

| Seq. | Filing Date | | Docket Text | Sealed | Filing ID |
|---|---|---|---|---|---|
| 0 | 1/29/2020 10:10:35 AM | E | COMPLAINT TORT NUISANCE MONEY DAMAGES with NOTICE TO DEFEND | No | 12518319 |
| 1 | 2/3/2020 2:22:20 PM | | RECEIVED IN SHERIFF'S OFFICE FOR SERVICE. TRANSACTION #18 1 01910 . AMOUNT PAID $ 79.00 | No | 12523146 |
| 4 | 2/4/2020 9:05:35 AM | | SHERIFF'S RETURN, UNDER OATH, FILED. DEPUTY SCOTT SCISS ON 2/4/2020 AT 2:14 PM, SERVED DEFENDANT(S) PURSUANT TO PA.R.C.P. #402(A), SERVED PERSON IN CHARGE OF BUSINESS (A)(2)(III) . 530 EAST BROAD STREET, QUAKERTOWN, PA 18951, | No | 12543531 |
| 2 | 2/5/2020 10:34:20 AM | | SHERIFF'S RETURN, UNDER OATH, FILED. DEPUTY MARYELLEN KELLY ON 2/5/2020 AT 9:41 AM, SERVED DEFENDANT(S) PURSUANT TO PA.R.C.P. #402(A), SERVED PERSON IN CHARGE OF BUSINESS (A)(2)(III) HARPEL . WORKER SERVED - SAYS HARPEL IS HIS NAME FOR FIRST AND LAST NAME . 288 OLD YORK ROAD, WARMINSTER, PA 18974, | No | 12525486 |
| 3 | 2/5/2020 12:15:42 PM | E | AFFIDAVIT OF SERVICE OF COMPLAINT BY THE DISTRICT ATTORNEY OF BUCKS COUNTY UPON EONSMOKE, LLC | No | 12525707 |

| Seq. | Filing Date | | Docket Text | Sealed | Filing ID |
|---|---|---|---|---|---|
| 5 | 2/27/2020 10:38:54 AM | E | APPEARANCE OF JOHN MCCREESH IV ESQ., ENTERED FOR DEFT GULF MART | No | 12545195 |



## COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

BUCKS COUNTY DISTRICT ATTORNEY

vs.

JUUL LABS INC

NO.  2020-00621

### CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Bucks County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:  Patrick Howard, Esq., ID: 88572

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**  ☐ Yes  ☒ No

**MDJ Appeal**  ☐ Yes  ☒ No

**Money Damages Requested** ☒

**Commencement of Action**:

Complaint

**Amount in Controversy**:

More than $50,000

## Case Type and Code

Tort:

Nuisance

**Other**:

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY
## CIVIL DIVISION

THE DISTRICT ATTORNEY OF BUCKS COUNTY

| | | |
|---|---|---|
| **Plaintiff** | : | **No.**_____ |
| **vs.** | : | |
| | : | _____ |
| | : | **Form of Action** |
| JUUL LABS, INC.; EONSMOKE, LLC; GULF MART; | : | |
| AND LEHAL ASSOCIATES, INC. D/B/A DELTA GAS | : | _____ |
| **Defendant** | | **Complaint** |

## NOTICE

      You have been sued in court.  If you wish to defend against the claims set forth in the following pages you must take action within twenty (20) days after this complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

      YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE GO TO OR TELEPHONE THE OFFICES SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**Bucks County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone (215) 348-9413, 1-800-479-8585**
**www.bucksbar.org**

**PA Bar Association: www.pabar.org**

/s/ Patrick Howard
_____

**Attorney for** Plaintiff
_____

**Attorney I.D. #** 88572
_____
**Please type or print name and address**
Patrick Howard
Saltz Mongeluzzi Barrett & Bendesky

120 Gibraltar Rd., Ste 120, Horsham, PA 19044

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS**
**OF BUCKS COUNTY, PENNSYLVANIA**

THE DISTRICT ATTORNEY OF       :
BUCKS COUNTY,       :
Matthew D. Weintraub       :
Office of District Attorney       :
100 N. Main Street       :
2nd Floor       :
Doylestown, PA 18901       :
       :    **CIVIL CASE NO. :**
       Plaintiff,       :
   v.       :
       :
JUUL LABS, INC.,       :    **NON-JURY TRIAL**
560 20th Street       :
San Francisco, CA 94107       :
       :
and       :
       :
EONSMOKE, LLC       :
1500 Main Ave, Ste. 2       :
Clifton, NJ 07011-2120       :
       :
and       :
       :
GULF MART       :
530 East Broad Street       :
Quakertown, PA 18951       :
       :
and       :
       :
LEHAL ASSOCIATES, INC. D/B/A       :
DELTA GAS       :
288 Old York Road       :
Warminster, PA 18974       :
       :
       Defendants.

**COMPLAINT**

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiff, the District Attorney of Bucks County, in the name of the Commonwealth of Pennsylvania, brings this Civil Action Complaint against Defendants JUUL LABS, INC. ("JUUL"), EONSMOKE, LLC, GULF MART and LEHAL ASSOCIATES, INC. d/b/a DELTA GAS for disgorgement, restitution, civil penalties and injunctive relief arising from Defendants' violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 – 201-9.3, ("UTPCPL") and abatement of the ongoing public nuisance Defendants created in Bucks County, and alleges as follows:

## INTRODUCTION

1.      The tobacco industry has preyed on America's youth for decades, aggressively promoting tobacco products using tactics designed to appeal to children. The goal of its marketing campaign was simple: recruit new users at a young age, get them addicted to their product, and create life-long patrons. But while Big Tobacco[1] companies reaped billions of dollars in profits off addicting America's youth to cigarettes, smoking became a public health epidemic acknowledged by the United States Surgeon General in the 1960s, leading to widespread death and disease, pain and suffering, and massive amounts in healthcare costs. Beginning in the late 1990s, adolescent smoking rates finally began to fall. This was not, of course, because nicotine became any less addictive or because tobacco companies stopped preying on America's youth. Instead, it took years of legal battles and government regulation to remove Big Tobacco's reach into youth populations.

2.      While falling addiction rates would be viewed as a remarkable accomplishment by any objective measure, JUUL saw it as a business opportunity. In June 2015, JUUL (at that time known as Pax Labs) sought to fill the void left by Big Tobacco by introducing a new-age

---

[1] "Big Tobacco" is a name used to refer to the "big five" largest global tobacco industry companies which are Philip Morris International, British American Tobacco, Imperial Brands, Japan Tobacco International, and China Tobacco. *See* https://en.wikipedia.org/wiki/Big_Tobacco.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

electronic cigarette that is so addictive it led to the "largest ever recorded [increase in substance abuse] in the past 43 years for any adolescent substance used in the U.S."[2] By utilizing new technologies and social media, JUUL picked up right where the Big Tobacco companies left off.

3.     First, JUUL developed a nicotine-delivery product even more addictive than traditional cigarettes. Nicotine itself affects brain development, attention, cognition, and raises the risk of addiction to other dangerous drugs. According to the National Institute on Drug Abuse, nicotine acts directly on the neurotransmitter dopamine, causing a dependence similar to heroin and other deadly opiates that have decimated American communities.[3]  Due to JUUL's innovative high-quality, rapid nicotine delivery system, the nicotine is even more potent than the nicotine in traditional cigarettes, which is even more pronounced when used by minors.  As a result, JUUL has turned a generation of minors into addicts, constantly craving their next hit of nicotine. And while traditional cigarette smoke leaves an odor and is easily detectible, the JUUL nicotine pods came in sweet flavors and produce an odorless cloud, so it can be inhaled almost anywhere and easily hidden from teachers and parents.

4.     Next, JUUL launched a massive online and social media advertising campaign. Because social media platforms (e.g. Instagram, Twitter, Facebook), are primarily used by adolescents, JUUL was able to easily target and manipulate youth by using advertisements designed to fulfill powerful psychological needs like popularity, peer acceptance, and a positive self-image. JUUL's advertisements consistently display glamorous young models using JUUL products while partying. Additionally, JUUL saturated social media feeds with advertisements,

---

[2] Vaping Surges: Largest Year-to-Year Increase in Substance Use Ever Recorded in the U.S. for 10th and 12th Grade Students, University of Michigan Institute for Social Research (Dec. 17, 2018), https://isr.umich.edu/news-events/news-releases/national-adolescent-drug-trends-in-2018/.

[3] *See* https://www.drugabuse.gov/publications/brain-power/grades-6-9/legal-doesn%27t-mean-harmless-module-2/background.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM. Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

hashtags, and paid influencers to promote JUUL's sleek new product.

5.      JUUL's predatory strategies were so obvious the United States Food and Drug Administration ("FDA") raided JUUL's headquarters in September 2018 for documents concerning its "sales and marketing practices," particularly in regard to the marketing of e-cigarettes to minors.[4]

6.      In response, JUUL "shut down" its social media accounts and promised to stop selling flavored nicotine pods. JUUL's promises, however, have proven empty. Its social media campaign remains active and JUUL still sells menthol flavored nicotine. Moreover, to a large extent the damage is already done. JUUL's deceptive and negligent practices have already led to widespread adolescent nicotine addiction, which can only be undone through expensive anti-addiction and cessation treatment.  As of October 8, 2019, the Center for Disease Control ("CDC") reported over 1,000 lung-injury cases related to vaping have occurred in 49 states and 26 deaths have been confirmed in 21 states – including one in Pennsylvania.[5]

7.      Furthermore, capitalizing on JUUL's self-created youth vaping epidemic other companies like New Jersey-based Defendant, EONSMOKE, LLC, jumped in to fill the void when JUUL removed its flavored pods from the market. For sure, EONSMOKE currently sells on its website JUUL compatible flavor pods including, mango, green apple, and kiwi strawberry. Likewise, EONSMOKE's flavored pods were found stocked on the shelves of Defendant DELTA GAS as recently as Friday, January 17, 2020:

---

[4] https://www.nytimes.com/2018/10/02/health/juul-ecigarettes-fda-raid.html.

[5] https://www.cdc.gov/tobacco/basic_information/e-cigarettes/severe-lung-disease.html.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 1: EONSMOKE Pods Purchased at DELTA GAS on Jan. 17, 2020*

8.      The dye has been cast and, as a result, JUUL controls nearly 75% of the e-cigarette market.[6] Yet, in the face of mounting litigation and regulation, JUUL changed course and wants to rewrite its history re-branding itself as a "safe" alternative to smoking and as a means to stop smoking traditional cigarettes. This is simply a false narrative designed simply to provide JUUL with cover.

9.      In December 2018, Altria, the corporate conglomerate formerly known as Phillip Morris—one of the world's largest producers and marketers of tobacco cigarettes—purchased a 35% ownership stake in JUUL for approximately $12.8 billion. As such, JUUL is now backed, owned, emboldened, and beholden to Big Tobacco.

10.     Since 1989 the Commonwealth of Pennsylvania has conducted the Pennsylvania Youth Survey ("PAYS"), a survey of school students in the 6th, 8th, 10th and 12th grades to learn about their behavior, attitudes and knowledge concerning alcohol, tobacco, other drugs and

---

[6] https://www.cnbc.com/2018/07/02/juul-e-cigarette-sales-have-surged-over-the-past-year.html.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

violence.[7] Last conducted in 2017, the PAYS data indicates that 16.3% of Pennsylvania students had vaped in the previous 30 days.[8] More specifically, 25% of all high school students and nearly 7% of all middle school students in Pennsylvania had vaped within the previous 30 days. For senior high school students in Bucks County that number increases to 37.2%.[9]

11.    Dr. Rachel Levine, Pennsylvania's Secretary of Health, characterizes the rapid increase in e-cigarette use by Pennsylvania youth as an "epidemic" and called on all public health officials to work together to "stem that tide."[10]

12.    Bucks County, through its Drug and Alcohol Commission, established a web page with resource materials for schools, parents, educators, and health care providers to assist them in understanding e-cigarettes and the dangers they pose.[11]

13.    The District Attorney of Bucks County brings this action to hold Defendant JUUL, EONSMOKE, and those entities—co-Defendants GULF MART and LEHAL ASSOCIATES, INC. d/b/a DELTA GAS—who the Federal Drug Administration ("FDA") confirmed to have illegally sold JUUL to minors in Bucks County, accountable under the UTPCPL for their role in creating and perpetuating this public health crisis. The District Attorney seeks disgorgement of the revenues acquired by Defendants through their marketing tactics and illegal sales to minors in the County. The District Attorney also seeks disgorgement, restitution, civil penalties, injunctive relief, as well as restitution to fund addiction treatment along with community and educational outreach programs to abate the public nuisance JUUL and the other Defendants have caused.

---

[7] *See* https://www.pccd.pa.gov/Juvenile-Justice/Pages/Pennsylvania-Youth-Survey-(PAYS).aspx.

[8] Pennsylvania Youth Survey (PAYS) 2017.

[9] *Id.*

[10] https://local21news.com/news/local/how-pennsylvania-plans-to-stop-youth-vaping.

[11] https://www.bcdac.org/prevention/vaping_and_e-cigarettes.php

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## PARTIES

14.     Plaintiff is the District Attorney of Bucks County, Pennsylvania, who brings this action pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1-201-9.3 and Pennsylvania's Public Nuisance law.

15.     The District Attorney is expressly authorized to bring this action under the UTPCPL whenever the District Attorney has reason to believe that any person is using or is about to use any method, act, or practice declared by the UTPCPL to be unlawful, and that such proceedings would be in the public interest.  73 P.S.§ 201-4; § 201-8(b).

16.     Based on the allegations in this Complaint, the District Attorney has considerable reason to believe that that Defendants have used, and will continue to use, methods, acts, and/or practices declared by the UTPCPL to be unlawful and is bringing this action for the public's benefit.

17.     Defendant, JUUL LABS, INC., is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 560 20th Street, San Francisco, California 94107. JUUL was formerly known as Ploom Products, Inc. and Pax Labs, Inc.

18.     Defendant, EONSMOKE, LLC, is a limited liability company organized and existing under the law of California with its principal place of business located at 1500 Main Ave, 2nd Floor, Clifton, New Jersey 07011. EONSMOKE distributes JUUL compatible vaping pods with flavors like watermelon, strawberry, cool mint, mango, and café latte.  EONSMOKE's flavored products were found stocked on the shelves at Defendant, DELTA GAS on January 17, 2020 (see Figure 1).

19.     Defendant, GULF MART, is a company organized and existing under the laws of the Commonwealth of Pennsylvania located at 530 East Broad Street, Quakertown, Bucks County, PA 18951.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

20.     Defendant, LEHAL ASSOCIATES, INC. d/b/a DELTA GAS "DELTA GAS," is a company organized and existing under the laws of the Commonwealth of Pennsylvania located at 288 Old York Road, Warminster, Bucks County, PA 18974.

21.     In the largest coordinated enforcement effort in the FDA's history, in the summer of 2018 the agency issued more than 1,300 warning letters and civil monetary penalties (fines) to retailers who illegally sold JUUL and other e-cigarette products to minors during a nationwide, undercover blitz of brick-and-mortar and online stores.

22.     Defendant, GULF MART, was inspected by the FDA on August 3, 2018, and determined it illegally sold JUUL products to minors.   On August 9, 2018, the FDA issued GULF MART a written warning.

23.     Defendant, DELTA GAS, was inspected by the FDA on August 1, 2018, and discovered to have illegally sold JUUL to minors and, consequently, was issued a warning August 9, 2018.

## JURISDICTION AND VENUE

24.     This Court has original jurisdiction over this action pursuant to § 931 of the Judicial Code, 42 Pa. C.S.A. § 931(a).

25.     Venue is proper with the Court pursuant to Pa. R. Civ. P. 1006(c)(1).

26.     Defendants JUUL and EONSMOKE'S e-cigarette products were marketed, distributed and sold within Bucks County, Pennsylvania by the Defendants. Defendants GULF MART and DELTA GAS reside in Bucks County.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**FACTUAL ALLEGATIONS**

I.     **History of Tobacco Litigation and Regulation Leading to the Prohibition of Advertising and Marketing to Minors**

27.     The tobacco industry as a whole has a sordid history of deceptive marketing that made it one of the most profitable industries in the world. Since the late 19th and early 20th centuries, tobacco companies have wrongly used advertisements to market their products to adolescent users. Over the last 75 years, however, litigation and regulation have effectively led to the prohibition of advertising and marketing cigarettes to minors.

28.     Beginning in the 1950s, individuals began bringing personal injury and wrongful death claims against tobacco companies. In the 1960s, the U.S. Surgeon General began reporting on the health dangers associated with smoking. In response, the United States Congress passed the Federal Cigarette Labeling and Advertising Act in 1965, requiring the surgeon general's warning on every cigarette pack. In 1971, all broadcast advertising on television and radio for cigarettes was banned by Congress pursuant to the Public Health Cigarette Smoking Act. Despite these legislative efforts, smoking remained rampant.

29.     In March 1994, the U.S. Surgeon General reported on the impact that tobacco related advertising and promotional activities has on tobacco consumption by minors. The surgeon general found, among other things, that the use of human models and cartoon characters in cigarette advertisements conveyed themes that appealed to young people.[12] In a separate 1994 consensus study by the National Academies of Science, Engineering, and Medicine, various themes used by tobacco companies to market to minors were studied. The report ultimately recommended forbidding the use of images and pictures which encouraged adolescent use, and

---

[12] Preventing Tobacco Use Among Young People: A report of the Surgeon General, Centers for Disease Control and Prevention (Mar. 11, 1994), https://www.cdc.gov/mmwr/pdf/rr/rr4304.pdf.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM. Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

allowing only text without slogans, scenes, or colors, because these marketing techniques encourage adolescent use.

30.     From 1994 through 1997, Attorneys General across the United States filed civil lawsuits against the tobacco industry to recover tobacco-related-health-care costs caused by rampant smoking, including those from Alabama, Alaska, California, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Utah, Washington, and West Virginia.

31.     In 1998, a settlement agreement was reached between the tobacco industry and individual states. The Tobacco Master Settlement Agreement ("MSA"), required cigarette companies to pay $368.5 billion over 25 years to compensate states for the costs of treating smoking-related illness, finance nationwide anti-smoking programs, and to underwrite healthcare for millions of uninsured children. The MSA was designed to forever change the way cigarettes are marketed in the United States by banning various marketing practices that targeted individuals under 18 years old.[13]

32.     In 2006, the United States District Court for the District of Columbia found that major U.S. cigarette companies, including Phillip Morris (now Altria, JUUL's largest shareholder), had violated the MSA by: (1) fraudulently claiming that "low tar" and "light" cigarettes were less harmful when the companies knew they were not, and (2) by marketing their products to children.[14]

---

[13] *See* https://www.nytimes.com/1997/06/21/us/cigarette-makers-in-a-368-billion-accord-to-curb-lawsuits-and-curtail-marketing.html.

[14] *See United States v. Phillip Morris USA, Inc.*, 9 F. Supp. 2d 1 (D.D.C. 2006).

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

33.     In 2009, President Barack Obama signed into law the Family Smoking Prevention and Tobacco Control Act ("FSPTCA"), which: (i.) limits the use of color on tobacco advertisements; (ii.) limits advertising in publications with significant teen readership to black text on white background only; (iii.) establishes 18 as a federal nationwide minimum age for legal cigarette and smokeless tobacco sales; and (iv.) prohibits the use of terms such as "light," "mild," and "low-tar" on tobacco product packages and advertisements.[15] When drafting the FSPTCA, Congress identified a number of relevant findings, including:

   a.  Reducing the use of tobacco by minors by 50% would prevent well over 10,000,000 children from becoming regular, daily smokers, saving over 3,000,000 of them from premature tobacco-induced death. Such a reduction in youth smoking would also result in approximately $75 million in savings attributable to reduced health care costs;

   b.  Advertising, marketing, and promotion of tobacco products have been directed to attract minors to using tobacco products, and these efforts have resulted in increased use of such products by minors;

   c.  The use of tobacco products in motion pictures and other mass media glamorizes its use for minors and encourages them to use tobacco products;

   d.  Minors are more susceptible to advertisements promoting reduced cigarette prices; and

   e.  Minors are generally more influenced by tobacco marketing than adults.[16]

34.     Due to the above-referenced litigation and regulation, the tobacco's industry advertising practices for traditional cigarettes have been severely restrained. Consequently, cigarette use amongst 12th graders plummeted from 24.6% in 1997 to 5.5% in 2015.[17]

---

[15] 21 U.S.C. § 301, *et seq.*

[16] 21 U.S.C. § 301 (14)-(30).

[17] Adolescents and Tobacco: Trends, U.S. Department of Health and Human Services, https://www.hhs.gov/ash/oah/adolescent-development/substance-use/drugs/tobacco/trends/index.html.

## II.    E-Cigarettes

### A.    *The Electronic Nicotine Delivery System.*

35.    Electronic nicotine delivery systems ("ENDS"), commonly referred to as e-cigarettes, are hand-held products designed to deliver nicotine and other substances to a user in an odorless cloud. ENDS typically consist of a battery-powered heating element, a replaceable cartridge that contains high levels of nicotine, and an atomizer. When heated, the liquid contents of the cartridge are converted into an aerosol that the user inhales (i.e., vapes), delivering nicotine rapidly into his/her bloodstream.

36.    ENDS come in many shapes and sizes and are colloquially referred to as "vapes," "vaporizers," "vape pens," "hookah pens," "electronic cigarettes," "e-cigarettes," "e-cigs," and "e-pipes." ENDS may be manufactured to look like conventional cigarettes, cigars, pipes, pens, and USB flash drives, while others resemble canteens or portable hard drives (sometimes referred to as "tank systems"). The use of ENDS to inhale nicotine is commonly referred to as "vaping," "vaporizing," or—most recently and popularly—"JUULing."

37.    Unlike traditional cigarettes, which once lit by the user has a limited lifespan (usually 6-10 minutes) to consume nicotine, e-cigarette's battery life and nicotine pods permit the user to inhale nicotine up to 300 distinct times before having to replace the cartridge. Further, unlike traditional cigarettes which law requires they be smoked outdoors away from public spaces, e-cigarettes give off an odorless cloud that is undetectable indoors.

### B.    *Chemicals Contained Within E-Cigarettes*

#### i.    *Nicotine*

38.    Nicotine is highly-addictive and acts directly on the neurotransmitter dopamine, causing a dependence like heroin and other deadly opiates. Nicotine's potency is even more pronounced when used by adolescents, affecting brain development, attention, cognition, and

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

raising the risk of addiction to other drugs. The addictive nature of nicotine is widely known. In fact, a 2007 study found that nicotine was the third most addictive substance in the world behind heroin and cocaine.[18]

39.     Nicotine's highly addictive nature stems from its effects on the central nervous system. When ingested, nicotine can accelerate blood pressure and pulse, affect mood, increase circulating levels of hormones and neurotransmitters, increase metabolic rate, constrict blood vessels, and cause muscle relaxation. Once nicotine enters the body through inhalation, it is distributed quickly through the bloodstream and crosses the blood-brain barrier, reaching the brain within 10-20 seconds after inhalation. The acute effects of nicotine, though, are fleeting and dissipate in a few minutes. This causes the user to continue dosing frequently to maintain the drug's pleasurable effects and prevent withdrawal symptoms.

40.     There is a frightening overlap between the effects of nicotine and opiates on dopamine signaling with the brain's reward centers.[19] Studies demonstrate the severity of tobacco and nicotine addiction by equating its grip on the individual to that of heroin, as both nicotine and opiates act on the same structures and receptors in the human brain.[20]

41.     Nicotine has the potential to adversely affect the heart (ischemia and myocardial dysfunction), eyes (macular degeneration and cataracts), reproductive system (irregular menstrual cycles), lungs (asthma and emphysema), kidneys (chronic kidney disease), and has teratogenic side-effects (cognitive deficits and behavioral abnormalities). Exposure to nicotine, even from non-traditional tobacco sources such as nicotine e-cigarettes, produces an increased risk of cardiovascular disease, an increased risk of peripheral arterial disorders due to the

---

[18] https://www.cnn.com/2019/01/02/health/most-addictive-substances-partner/index.html.
[19] Opiate And Nicotine Have Surprisingly Similar Effect On Brain's Reward System, Science Daily (Feb. 19, 2008), https://www.sciencedaily.com/releases/2008/02/080212171131.htm.
[20] *Id.*

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

increase in blood pressure and its constrictive effect on blood vessels, and an increased risk of stroke.

42.    The adolescent brain is exceptionally more vulnerable to the addictive effects of nicotine because the circuits of the brain underlying pleasure develop faster than the circuits in the brain that promote decision-making, impulse control, and rational thinking. Compared with adults, adolescents are generally more motivated by rewards, are less averse to risks, and are more influenced by peers. The same factors apply to the estimation of health risks relating to smoking— many adolescents have a more optimistic attitude regarding their smoking behavior, believing that they "could smoke for a few years and then quit if they wished."[21]

43.    Among adolescents, the use of nicotine is a psychiatric problem that cultivates addictive behaviors by rewiring and interfering with brain development. Several studies indicate that smoking and nicotine exposure during adolescence is associated with disturbances in working memory and attention, as well as reduced prefrontal cortex activation.[22] Studies show that adolescent tobacco and nicotine use are associated with later risk of developing mental and behavioral problems such as major depressive disorder, agoraphobia, panic disorder, addiction to other substances, and/or antisocial personality disorder.[23] Not only does the use of nicotine by adolescents result in a greater level of addiction to nicotine itself, but it increases vulnerability to initiation and subsequent addiction to other drugs as well.

44.    Simply put, the adolescent brain is more vulnerable to the effects of nicotine than

---

[21] Arnett, JJ. Optimistic bias in adolescent and adult smokers and nonsmokers. *Addict Behav.* 2000; 25(4): 625-32.

[22] 9 Jacobsen LK, Krystal JH, Mencl WE, Westerveld M, Frost SJ, Pugh KR. Effects of smoking and smoking abstinence on cognition in adolescent tobacco smokers. Biological Psychiatry. 2005;57:56–66; Musso F, Bettermann F, Vucurevic G, Stoeter P, Konrad A, Winterer G. Smoking impacts on prefrontal attentional network function in young adult brains. Psychopharmacology (Berl) 2007;191:159–169.

[23] Short- and Long-Term Consequences of Nicotine Exposure during Adolescence for Prefrontal Cortex Neuronal Network Function, Cold Spring Harb Perspect Med. (Dec. 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3543069.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the adult brain. Adolescents progress faster to nicotine dependence than adults, find nicotine more rewarding, underestimate the risks of smoking, and are more influenced by smoking behavior in their social environment. Dr. Sharon Levy, director of the Adolescent Substance Use and Addiction Program at Boston Children's Hospital, called the popularity of teen vaping an "entirely predictable problem," given adolescents' vulnerability to nicotine. Levy has treated numerous "vape-addicted" adolescents in her program, showing psychiatric symptoms rarely seen with traditional cigarettes or among adults.

### ii.   *Other Chemicals*

45.    "Vaping" and "vaporizing" as used by JUUL gives the connotation that what the user is inhaling is a harmless vapor.  Nothing could be further from the truth.  In fact, when the liquid inside the pod is warmed it creates an aerosol.

46.    Vapor refers to the gaseous state of a substance; in contrast, an aerosol is a suspension of fine particles of liquid, solid or both in a gas.[24]

47.    The e-cigarette aerosol is made up of a high concentration of ultrafine particles, and the particle concentration is higher than in conventional tobacco cigarette smoke.  Many of the elements identified in the aerosol are known to cause respiratory distress and disease, including tin, silver, iron, nickel, aluminum, and silicate. Further, the concentrations of nine out of eleven elements in the aerosol were found even higher than, or equal to, the corresponding concentrations in conventional cigarette smoke.[25]

---

[24] *See* Cheng, T. (2014). "Chemical evaluation of electronic cigarettes" *Tobacco Control*. 23 (Supplement 2).

[25] Williams, M.; Villarreal, A.; Bozhilov, K.; Lin, S.; Talbot, P., "Metal and silicate particles including nanoparticles are present in electronic cigarette cartomizer fluid and aerosol," *PLoS ONE* 8(3): e57987, March 20, 2013.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## III.    JUUL Products

### A.    Background

48.    JUUL sells more e-cigarettes than any other company in the United States. From 2016 to 2017, JUUL's sales increased 641%, rising from 2.2 million devices sold in 2016 to 16.2 million devices in 2017, giving JUUL 46.8% of the e- cigarette market. By 2018, JUUL's share of the market rose to 75.8%. JUUL is currently valued at over $38 billion. *Figure 1* below depicts the major e-cigarette manufacturers' market share between 2014 to 2018.[26]



*Figure 2: E-Cigarette Market Share 2014-2018*

49.    As shown in *Figure 2*, the JUUL e-cigarette includes a rechargeable battery and heating element (*i.e.,* ENDS), which work together to heat pre-filled JUUL nicotine pods.

---

[26] *See* http://www.natocentral.org/uploads/Wall_Street_Update_Slide_Deck_February_2019.pdf.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 3: The JUUL device and accompanying JUUL Pods*

50.     The rectangular JUUL e-cigarette device consists of an aluminum shell, battery, a magnet for the USB-charger, a circuit board, an LED light, and a pressure sensor. The JUUL pod is a plastic enclosure containing 0.7 milliliters of JUUL's nicotine solution and a coil heater. When a sensor in the JUUL e-cigarette detects the movement of air caused by suction on the JUUL pod, the battery activates the heating element which converts the nicotine solution in the JUUL pod into a vapor. The LED light embedded in the JUUL device serves as a battery level indicator and lights up in a "party mode" display of colors when waved around.

51.     In 2015 JUUL obtained a patent for a nicotine salt liquid formulation for generating an inhalable aerosol in an electronic cigarette (Patent No. 9,215,895 ("the JUUL Patent")) and later trademarked as JUULSALTS™. JUUL's use of an aerosol, rather than a flame, to activate its nicotine solution results in a quick powerful burst of nicotine which causes users to feel the rapid onset of the nicotine upon inhalation. This mechanism also makes its nicotine exceedingly more addictive.[27]

52.     Nicotine salts allow manufacturers to pack more nicotine into their products, mask nicotine's naturally unpleasant taste, and permit the drug to be absorbed by the body quicker.[28]

---

[27] https://www.nytimes.com/2018/04/24/health/fda-e-cigarettes-minors-JUUL.html?module=inline.

[28] https://www.cnn.com/2019/01/17/health/vaping-ecigarettes-kids-teens-brains-fda/index.html.

17

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

53.     The pre-filled JUUL Pods, which contain JUUL's patented nicotine solution, slide into the end of the JUUL device. JUUL nicotine pods came in a variety of flavors, such as Virginia Tobacco, Classic Tobacco, Mint (formerly Cool Mint), Menthol, Fruit (formerly Fruit Medley), Mango, Cucumber (formerly Cool Cucumber), and Crème (formerly Crème Brûlée).

54.     The JUUL Patent included a blood plasma study comparing the pharmacokinetic effects of nicotine benzoate (nicotine salt) ingested through an e-cigarette to nicotine ingested from a traditional cigarette. The study concluded that:

> a.   nicotine absorption through the e-cigarette is between 1.25 and 2.7 times faster than traditional cigarettes;
>
> b.   e-cigarettes deliver higher amounts of nicotine at a faster rate than a traditional cigarette; and
>
> c.   because of JUUL's method of nicotine absorption, JUUL's nicotine solution would still be more addictive than traditional cigarettes even with lower concentrations.[29]

55.     The concentration of nicotine in JUUL pods, however, is not low, especially compared to traditional cigarettes. JUUL actually delivers doses of nicotine that are several times higher than those in traditional cigarettes. JUUL's 2014 patent application shows that JUUL's nicotine solution delivers more nicotine to the bloodstream than a traditional cigarette, creates a peak nicotine blood concentration that is 36% higher than a traditional cigarette, and increases the heart rate faster than a traditional cigarette.

56.     Corinne Graffunder, DrPH, Director of Centers for Disease Control and Prevention's Office on Smoking and Health, stated in 2018, "[t]here are no redeeming benefits of e-cigarettes for young people . . . The use of certain USB-shaped e-cigarettes is especially dangerous among youth because these contain extremely high levels of nicotine, which can harm

---

[29] https://patents.google.com/patent/CA2909967A1/en.

Case# 2020-00621-0 - JUDGE.50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the developing adolescent brain."[30] The U.S. Surgeon General, Jerome Adams, stated in December 2018 that JUUL's liquid nicotine mixture is specially formulated to give a smoother, more potent nicotine buzz that "can promote dependence in just a few uses."[31]

### B. JUUL's Misleading Statements

57.     Throughout its history, JUUL has repeatedly compared the contents of its nicotine pods to traditional tobacco products. Prior to JUUL's release in June 2015, PAX (JUUL's original name) released a "commissioned study" comparing PAX users blood nicotine levels to traditional combustion cigarettes and other e-cigarettes.  According to PAX, the results were as follows:



*Figure 4: PAX's pre-release product information comparing nicotine levels*

---

[30] https://www.cdc.gov/media/releases/2018/p1002-e-Cigarettes-sales-danger-youth.html.

[31] https://chicago.suntimes.com/business/juul-teen-vaping-us-surgeon-general.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

58.     When JUUL's website debuted in 2015, it included a similar chart:



*Figure 5: JUUL's website chart comparing
nicotine levels*

59.     While the JUUL Patent indicates that JUUL's nicotine salt solution causes nicotine-blood levels approximately 30% *higher* than a traditional cigarette, the PAX and JUUL charts (*Figures 3 and 4*) indicate that JUUL delivers approximately 25% *less* nicotine to the blood than a cigarette, thereby creating the false impression that JUUL is less addictive than a traditional cigarette.

60.     JUUL's current website and advertisements continue to assert that each JUUL pod is designed to contain approximately 0.7mL with 5% nicotine by weight which, as JUUL asserts in *Figure 5* below, is "approximately equivalent to 1 pack of cigarettes or 200 puffs."

20

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 6: June 2018 tweet from JUUL comparing JUUL to traditional cigarettes*

61.     JUUL's statements are false, materially misleading, and materially omit facts, including the efficiency with which the product delivers nicotine into the bloodstream.

62.     Because JUUL's nicotine salts increase the rate and magnitude of blood plasma nicotine compared to cigarettes, the risk of nicotine addiction and abuse is higher for JUUL e-cigarettes than traditional cigarettes.

63.     Despite such knowledge—which is evidenced by its own patent—JUUL never warned or disclosed to consumers that JUUL pods' nicotine salt formulation deliver an exceptionally potent dose of nicotine or that JUUL's nicotine salt formulation delivers more nicotine than traditional cigarettes. In fact, JUUL has misled its customers into believing just the opposite.

21

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

64. Despite making numerous revisions to its packaging since 2015, JUUL did not add nicotine warnings to its device or pods until the FDA forced it to do so in August 2018 when the exterior packaging was changed to add: "WARNING: This product contains nicotine. Nicotine is an addictive chemical."

65. While JUUL has been compelled to warn its consumers of the presence of nicotine, it still fails to disclose the other unique and highly addictive attributes of the JUUL products, including that:

   a.  the JUUL pods nicotine salt formulation delivers an exceptionally potent dose of nicotine;

   b.  the JUUL devices deliver doses of nicotine that are several times higher than those allowed in traditional cigarettes;

   c.  the higher efficiency with which the JUUL devices deliver nicotine into the bloodstream increases its addictiveness;

   d.  JUUL pods can be more addictive than traditional cigarettes; and

   e.  the chemicals contained in JUUL pods (including, but not limited to, nicotine) pose serious health risks, such as cancer, stroke, COPD, and other diseases commonly associated with traditional cigarettes.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

66.     Despite having actual and constructive knowledge of the above referenced facts, JUUL continues to knowingly mislead its customers into thinking its product is safer and less addictive than traditional cigarettes.

67.     JUUL misrepresents the nicotine content of JUUL pods by representing them as 5% strength. However, JUUL pods contain more than 5% nicotine by volume and deliver it in a form that is particularly potent. JUUL's use of "strength" to indicate concentration by weight conflicts with the industry standard of reporting concentration by volume, leading consumers to believe it contains less nicotine than other formulations as advertised as 6% nicotine, when JUUL pods in fact contain *more* nicotine than a solution that is 6% nicotine by volume.

68.     JUUL's "5% strength" statement misrepresents the most material feature of its product: the nicotine content.

### C.     JUUL's Advertising Targeted to Minors
  i.     *JUUL's advertising strategy copied directly from Big Tobacco*

69.     Taking pages out of the tobacco industry's playbook, JUUL crafted its entire marketing strategy around unethical practices that have been known to appeal directly to minors. JUUL adopted the same themes used by Big Tobacco to glamorize smoking while downplaying its addictiveness and deleterious health effects.

70.     In fact, JUUL co-founder James Monsees publicly admitted that he and co-founder Adam Bowen, looked at tobacco industry documents that were made public under the MSA in the mid-2000s, stating: "[The tobacco industry] became a very intriguing space for us to investigate because we had so much information that you wouldn't normally be able to get in most industries. And we were able to catch up, right, to a huge, huge industry in no time. And

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

then we started building prototypes."[32]

71.     In an April 2015 presentation (*Figure 6*) Monsees, grinningly, displayed a 30-year-old research memo stamped "SECRET" from the troves of R.J. Reynolds, stating to the audience "We also had another leg up."[33]



In this screenshot of an April 2016 video, which was recently removed from YouTube, a co-founder of Juul, James Monsees, presents an R.J. Reynolds research memo stamped "SECRET." (YouTube)

*Figure 7: Monsees Presents "SECRET" R.J. Reynolds Memo*

72.     In one such R.J. Reynolds "CONFIDENTIAL" memo titled, "RESEARCH PLANNING MEMORANDUM ON SOME THOUGHTS ABOUT NEW BRANDS OF CIGARETTES FOR THE YOUTH MARKET" now deceased R.J. Reynolds employee Claude E. Teague, Jr., wrote, "Realistically, if our company is to survive and prosper, over the long term, we must get our share of the youth market...There is certainly nothing immoral or

---

[32] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

[33] https://www.latimes.com/politics/story/2019-11-19/juul-vaping-chemical-formulas-based-in-big-tobacco.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

unethical about our company attempting to attract those smokers."[34]

73.    In a 2018 interview, Monsees, again, indicated that "the design of JUUL's advertising had been informed by traditional tobacco advertisement and that [the Stanford Research into the Impact of Tobacco Advertising Project's] online tobacco advertising collection had been quite useful to them." *Id.* Unsurprisingly, JUUL's advertisements have promoted similar themes and bear a striking resemblance to those of traditional tobacco companies (*Figures a-f* below).

**a.    Glamorous Models**




---

[34] *Id.*

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*b.   Relaxation*




*c.   Social inclusion*




Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*d.   Romance*

 

*e.   Flavors*

 

27

Case# 2020-00621-0 - JUDGE.50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*f.*      ***New technologies and select terms to convey health and safety***



*JUUL's social media campaign*

74.    The goal of a social media campaign is to exploit existing social networks in order to produce brand awareness through online word-of-mouth. Because of the nature and speed of the internet, social media campaigns can rapidly reach a large number of people. It is widely accepted that the best social media campaigns turn customers into salespeople who then repeat company representations and talking points. While the effects of social media campaigns may appear organic, in reality, they are the result of carefully orchestrated corporate advertising.

75.    Studies show that teenagers tend to be on social media far more than adults:

   a.   95% have access to a smartphone;[35]

   b.   89% are online either "almost constantly" or "several times a day";[36]

   c.   On average, spend approximately 9 hours per day online; and[37]

---

[35] http://www.pewinternet.org/2018/05/31/teens-social-media-technology-2018.

[36] *Id.*

[37] https://www.washingtonpost.com/news/the-switch/wp/2015/11/03/teens-spend-nearly-nine-hours-every-day-consuming-media/?utm_term=.95a59dc01ead.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

    d.  70% use social media platforms multiple times a day[38]

76.    Advertisers are, of course, well aware of the above statistics. As one marketing director noted, "when someone becomes a customer at a young age, they will spend three times as much over their lifetime."[39]

77.    Today tobacco companies are prohibited from:

    a.  Using colored text and backgrounds in any advertisements;

    b.  Utilizing colored advertising in publications with significant teen readership;

    c.  Using outdoor advertising such as billboards;

    d.  Sponsoring events;

    e.  Giving free samples;

    f.  Paying any person to use, display, make reference to, or use as a prop any tobacco product in any media; and

    g.  Paying any third party to conduct any activity which the tobacco manufacturer is prohibited from doing.

78.    JUUL, by and through its marketing agencies, have exploited these marketing tactics long since unavailable to tobacco companies. To announce its release in June 2015, JUUL launched a multimillion-dollar "Vaporized" advertising campaign.

79.    As part of its "Vaporized" campaign, JUUL utilized images (such as *Figure 7*) depicting young and stylish models, bold colors, and memorable images, which in turn, promote idealized adolescents using JUUL products – a strategy blatantly aimed at minors.

---

[38] https://www.commonsensemedia.org/social-media-social-life-infographic.

[39] https://www.forbes.com/sites/forbescommunicationscouncil/2018/07/03/why-gen-z-is-on-the-a-list-for-e-commerce-marketers/#4cfc8af2c7b4.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 8: Images from JUUL's "Vaporized" Campaign*

80.    The "Vaporized" campaign's color scheme was similar to colors used by Natural American Spirit Cigarettes, a leading brand of cigarettes among teenagers (*Figure 9*) below.

 

*Figure 9: American Spirit Cigarettes and
JUUL's Color Scheme*

81.    Instead of warning about the dangers of nicotine, the "Vaporized" campaign utilized phrases such as "Smoking Evolved" (*see Figure 10*) to appeal to youth's interest with high-tech and modern products.[40]

---

[40] https://www.forbes.com/sites/robinlewis/2014/09/02/how-apple-neurologically-hooked-its-customers/#57604f8ff001.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 10: Image from JUUL's 2015 Vaporized Campaign*

82.     JUUL promoted its "Vaporized" campaign on Facebook, Instagram, and Twitter.

A 2018 report on the growth and marketing of the JUUL brand found that JUUL was one of the

first major retail e-cigarette brands to heavily rely on social media to market its products:

> [O]ur study shows that the growth of JUUL was accompanied by
> innovative marketing across a variety of new media platforms. The
> marketing of other major retail e-cigarette brands, at least in their early
> stages, relied heavily on either advertising on TV (e.g., Blu and Njoy) or
> promotional expenditures to retailers and consumers (e.g., Vuse and
> MarkTen), or both. However, JUUL was one of the first major retail e-
> cigarette brands that relied heavily on social media to market and
> promote its products. In particular, we found the number of JUUL-
> related tweets was highly correlated with quarterly retail sales of JUUL.
> In addition to Twitter, JUUL was heavily marketed and promoted on
> Instagram and YouTube. The official JUUL account on Instagram, for
> example, used a variety of marketing and promotional schemes to attract,
> engage with and retain followers. The account used artsy, professional-
> grade photographs to display its products and evoke lifestyle feelings
> such as relaxation, freedom and sex appeal. Those posts also heavily
> emphasized JUUL's variety of flavors.[41]

83.     As part of the 'Vaporized' campaign, JUUL sponsored at least 25 launch parties

and related events across the country. Again, JUUL failed to include any disclaimers about the

dangers of nicotine in their promotional materials. Instead, the invitations (as shown in *Figure*

*11*) depicted youth-focused imagery and advertised live music.

---

[41] https://tobaccocontrol.bmj.com/content/early/2018/05/31/tobaccocontrol-2018-054382.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.





*Figure 11: JUUL Product Launch Party Promotional Invitation*

84.     At JUUL product launch events, JUUL distributed free starter packs (*see Figure 11*). As discussed above, the MSA forbids such conduct because the practice directly promotes nicotine addiction. After acknowledging in October 2017 that it is unlawful to distribute free samples of its product at live events, JUUL began "charging" a nominal $1 fee for its product at "demo events."[42]

---

[42] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

Case# 2020-00621-0 - JUDGE.50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 12: JUUL's free New York launch party promotion tweet*

85.     The ultimate goal of a viral social media campaign, like "Vaporized," is to generate significant online buzz about the product such that the customer functions as the spokesperson and promotes the campaign through free online "word-of-mouth" advertising.

86.     "Hashtags"[43] are an essential tool in creating this effect as brands can join in on trending topics and engage with large numbers of readers. "Branded hashtags" that include the company's name provide an additional benefit because every time someone uses a branded hashtag the company's social media presence increases.

87.     JUUL has utilized branded and non-branded hashtags throughout its existence. Commonly used JUUL hashtags include: #juul, #juulvapor, #switchtojuul, and #vaporized (see *Figure 13*)

---

[43] A hashtag is a type of metadata tag used on social media that makes it possible for others easily to find messages with a specific theme or content.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 13: 2015 and 2017 Social Media Posts by JUUL*

88.     JUUL's strategic use of hashtags has dramatically increased the amount JUUL related social media posts and its overall social media presence.

89.     JUUL also gained online exposure to minors on social media by paying social media influencers to promote its product. "Influencers" are individuals who have developed large social media followings and are viewed as trendsetters.[44] Generally, influencers post pictures of themselves using the product they are promoting, along with a company-endorsed hashtag.

90.     JUUL actively engaged with social media influencers, even posting job listings for influencers online. *Figure 14* shows JUUL responding to an individual's inquiry about being a JUUL "influencer" and directing them to apply on JUUL's website.



*Figure 14: February 2018 tweet by JUUL*
*regarding social media influencers*

---

[44] http://mediakix.com/2018/08/influencer-definition-marketing/#gs.awBGIprD.

34

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

91.    JUUL misleadingly presented certain social media posts by failing to disclose that JUUL was paying the person in exchange for making the post. As a result, JUUL's target audience were misled into thinking that these influencers actually used and were endorsing JUUL products, when in fact, the posts were bought and paid for by JUUL.

92.    Along with paid social media influencers, JUUL also posted advertisements and news stories about famous Hollywood celebrities using their products.[45] For instance, JUUL used its social media accounts to promote images of Katy Perry with a JUUL product. Ms. Perry appeals to a very youthful audience.  By tagging Katy Perry in social media posts (*see Figure 15*), JUUL was able to introduce and promote its product to Ms. Perry's 107,000,000 Twitter followers.



*Figure 15: JUUL social media post with Katy Perry using JUUL products*

---

[45] https://www.forbes.com/sites/kathleenchaykowski/2018/11/16/the-disturbing-focus-of-JUULs-early-marketing-campaigns/#3a1f4dc14f9c.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

93.     While JUUL's competitors spent more than $16 million between 2015 and 2016 on traditional advertising, JUUL spent only $2.1 million between 2015 and 2017 and instead relied on the above-referenced social media strategy. As shown in *Figure 16*, JUUL heavily relied upon this strategy with the number of JUUL-related tweets exponentially increasing from 8,416 in 2015, to 21,292 in 2016, to 366,786 in 2017.[46]



*Figure 16: Number of JUUL-Related Tweets (2015-2017)*

94.     JUUL's social media strategy was highly successful and profitable. As illustrated in *Figure 17*, JUUL has significantly outperformed its competitors.[47]

---

[46] http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.
[47] *Id*.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 17: Total Sales of E-Cigarettes Among Largest Manufacturers (2011-2017)*

95.     JUUL persisted with its online marketing efforts until finally shutting down its social media sites in November 2018, approximately three years after its launch, due to public and governmental scrutiny.

       ii.     *Other JUUL marketing techniques*

96.     JUUL has minimally used traditional marketing channels such as magazines, newspapers, billboards, radio, and television to promote its products. In 2015, however, JUUL utilized a single magazine to launch its advertising campaign – *Vice*. *Vice* markets itself as the "#1 youth media company" with "a mission to empower young people," and "defin[e] global youth culture."[48] JUUL ran a full page spread in *Vice* magazine in 2015 using young models in playful poses:

---

[48] https://kit.vice.com.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 18: JUUL's Vice Magazine Advertisement from 2015*

97.     Also as part of its 2015 launch, JUUL employed 12 massive video billboards in Times Square. The video displays showed images of fashionable young models smiling and kissing while enthusiastically vaping. Examples of JUUL's Times Square video billboards are depicted in *Figure 19*.

 

*Figure 19: JUUL's Times Square video billboards from 2015*

38

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

98.     Although American tobacco companies agreed to stop using billboards in 1999 due to public health concerns, JUUL has knowingly exploited this practice in order to maximize revenue and profit.

### iii.   *JUUL's unique design, price and use of flavored vapor*

99.     The design of the JUUL e-cigarette is similar to a USB flash drive. It is discrete in size, shape, and even emits a reduced odor – all of which makes it more appealable to youth users. JUUL's website once touted the JUUL as "the i-Phone of E-cigs," framing the device as cool, hip, and fashionable, therefore making it more appealing for minors to own and use.

100.     While a pack of cigarettes contains 20 cigarettes that each need to be lit separately, JUUL can be inhaled continuously and used indoors without detection by others thus eliminating the need for smoking breaks (a feature promoted heavily by JUUL in its advertisements). The design makes it easy to conceal and use without anyone noticing, including authority figures such as teachers and parents.[49]

101.     JUUL products are priced to appeal to minors, as one pack of four JUUL pods is almost as cheap as a single pack of cigarettes. A pack of four JUUL pods, which, according to JUUL is the equivalent of four packs of cigarettes, costs approximately $15.99 on the JUUL website. By contrast, a single pack of cigarettes in Pennsylvania costs approximately $7.00 - $8.00.

102.     Further, unlike traditional cigarettes which are irritating and cause an unpleasant feeling in the chest and lungs, JUUL's use of nicotine salt makes the aerosol more tolerable and even pleasant.[50]

103.     Along with its social media and advertising blitz, JUUL marketed and sold its

---

[49] https://www.ncbi.nlm.nih.gov/pubmed/30219794.

[50] https://www.vox.com/science-and-health/2018/5/1/17286638/JUUL-vaping-e-cigarette.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

JUUL pods in a variety of sweetened flavors that naturally appeal to minors. As shown in *Figure 20*, JUUL promoted its flavored nicotine pods through social media and traditional marketing platforms.




*Figure 20: JUUL Pod Flavor Marketing Images*

104.    JUUL pods are offered in both 5% and 3% nicotine for select flavors. However, all of the non-traditional, more appealing, adolescent-friendly flavors, such as Mango, Cucumber, Crème, and Fruit are *only* offered in 5% nicotine strength.

105.    Researchers have stated that JUUL's emphasis on sweet flavors directly appeals to youth, a demographic who largely might never use tobacco products.[51] According to a 2013-2014 survey, 81% of current youth e-cigarette users cited the availability of appealing flavors as the primary reason for use.[52]

106.    While the FDA banned traditional flavored cigarettes (other than menthol) in 2009 (such as cherry, chocolate, etc.), JUUL exploited this practice in order to maximize revenue and profit.[53]

107.    In March 2018, the United States Department of Health and Human Services

---

[51] https://www.businessinsider.com/stanford-JUUL-ads-photos-teens-e-cig-vaping-2018-11.

[52] *See* https://www.tobaccofreekids.org/assets/factsheets/0382.pdf.

[53] https://www.fda.gov/tobaccoproducts/labeling/productsingredientscomponents/ucm2019416.htm.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Secretary in Alex Azar, stated, "Flavors are a major reason [high school and middle school students] use these products in the first place."[54]

### D.    Government Investigations into JUUL

108.    In April 2018, after growing concern of the popularity of e-cigarettes with children, the FDA demanded that JUUL turn over documents about the marketing and research behind its products and stated that it would investigate whether JUUL was intentionally appealing to the youth market.[55] In announcing the investigation, the FDA explained:

> We need to examine all the available information to understand why kids are finding these products so appealing – and address it. That's why today, the FDA also sent an official request for information directly to JUUL Labs, requiring the company to submit important documents to better understand the reportedly high rates of youth use and the particular youth appeal of these products. The information we're requesting includes: documents related to product marketing; research on the health, toxicological, behavioral or physiologic effects of the products, including youth initiation and use; whether certain product design features, ingredients or specifications appeal to different age groups; and youth-related adverse events and consumer complaints associated with the products. We don't yet fully understand why these products are so popular among youth. But it's imperative that we figure it out, and fast. These documents may help us get there.[56]

109.    In September 2018, the FDA issued a letter to JUUL threatening to pull its products from the market if it did not submit plans within 60 days describing how it will address the widespread youth access and use of their products.[57] The FDA issued more than 1,300 warning letters and civil fines to retailers and distributors who illegally sold e-cigarette products

---

[54] https://www.usatoday.com/story/news/health/2018/11/15/fda-ban-vaping-flavors-electronic-cigarettes-menthol-cigars-scott-gottlieb/2003219002/.

[55] https://www.nytimes.com/2018/04/24/health/fda-e-cigarettes-minors-JUUL.html?module=inline.

[56] *See* https://www.fda.gov/downloads/TobaccoProducts/Labeling/RulesRegulationsGuidance/UCM605490.pdf.

[57] https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm620184.html.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

to minors.[58]

110.    On November 15, 2018, Scott Gottlieb (the FDA Commissioner at the time) acknowledged that "[g]iven the startling and disturbing youth use rates . . . it's clear that [the FDA] must do more . . . to target what appear to be the central problems – youth appeal and youth access to flavored tobacco product."[59]

111.    Since the FDA initiated its investigation, JUUL has tacitly admitted wrongdoing. Ashley Gould, the chief administrative officer for JUUL, stated, "[w]e have to take ownership for what was done in the past . . . Could we have done things different in the past? Yes."[60] Separately, a former senior manager at JUUL told The New York Times that the company was "well aware" its devices could appeal to teens and that teens were posting images of themselves vaping with JUULs on social media.[61]

112.    In June 2019, United States Congressman Raja Krishnamoorthi of Illinois, Chairman of the House Subcommittee on Economic and Consumer Policy, announced that his committee was investigating JUUL and asked the company to "provide memoranda and communications regarding its social media practices, advertising, and the product's long-term impact on consumer health."[62]

113.    In July 2019, JUUL co-founder James Monsees and chief administrative officer Ashley Gould testified before the House Subcommittee.[63]  During these hearings, it was revealed

---

[58] https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm620184.html.

[59] https://www.cdc.gov/mmwr/volumes/67/wr/mm6745a5.htm?s_cid=mm6745a5_w.

[60] https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-proposed-new-steps-protect-youth-preventing-access.

[61] https://www.nytimes.com/2018/08/27/science/JUUL-vaping-teen-marketing.html.

[62] See https://www.cnn.com/2019/06/13/politics/juul-house-investigation-krishnamoorthi-health/index.html.

[63] https://www.cnn.com/2019/07/24/health/juul-hearing-subcommittee/index.html.

that JUUL sponsored youth smoking-prevention and education programs — including one called a "holistic health education program"—in high schools, summer camps, and public out-of-school activities, according to documents released by congressional investigators. JUUL paid thousands of dollars, and even hundreds of thousands in some cases, to sponsor events and appear in front of children as young as 8 years old.[64]

114.    Subcommittee testimony included claims that a JUUL representative once visited a high school classroom and told students that JUUL e-cigarettes were "totally safe," according to a memo from Congressional investigators. Congressional lawmakers also produced internal emails that revealed that JUUL's own employees acknowledged that this strategy drew comparisons to educational programs once held by Big Tobacco companies.[65]

115.    According to the report issued by the House Subcommittee, JUUL "deliberately targeted children in order to become the nation's largest seller of e-cigarettes."[66]

116.    In July 2019, JUUL CEO Kevin Burns publicly apologized to parents with children who are now addicted to his company's products, "First of all, I'd tell them that I'm sorry that their child's using the product."  Burns continued, "It's not intended for them. I hope there was nothing that we did that made it appealing to them. As a parent of a 16-year-old, I'm sorry for them, and I have empathy for them, in terms of what the challenges they're going through."

117.    Following the Congressional hearings in September 2019, the FDA issued JUUL a formal warning letter regarding its marketing and advertising, including its claims that JUUL pods have a "reduced level or exposure to [nicotine]" and that "JUUL products present a lower

---

[64] https://www.businessinsider.com/juul-congress-e-cigs-target-teens-students-testimony-2019-7.

[65] Id.

[66] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Supplemental%20Memo.pdf.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

risk of tobacco-related diseases or are less harmful than one or more other commercially marketed tobacco products."[67]

118.    In response to the FDA's warning, JUUL announced in October 2019 that it would *temporarily* halt online sales of flavored e-cigarettes like mango.[68]

119.    On January 2, 2020, the FDA announced that it will ban fruit-and-mint flavored products used in personal vaping products.[69] The FDA will begin enforcing the rule banning fruit and mint flavors within 30 days (by February 1, 2020), and the regulatory agency will target companies that market to youths. The flavor ban does not apply to menthol and tobacco-flavored products.[70]

### E.    JUUL'S "Switch" Marketing Campaign is Misleading

120.    Faced with intense scrutiny from both lawmakers and government agencies, JUUL redefined its marketing campaign from promoting a "luxury" product with youth appeal to a smoking cessation device. JUUL removed many of the internet images depicting glamorous young models exhaling clouds of vapors. Instead, JUUL's website now depicts middle-aged adults in non-glamorous settings and suggests that JUUL exists solely for the benefit of adult smokers looking for an alternative to traditional tobacco products. Of course, JUUL's well-documented history clearly demonstrates that this is not, and was never, its true mission.

121.    Ari Atkins, a JUUL research and development engineer, said before JUUL's launch in 2015, "[w]e don't think a lot about addiction here because we're not trying to design a

---

[67] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juul-labs-inc-590950-09092019.

[68] https://www.nytimes.com/2019/10/17/health/vaping-juul-e-cigarettes.html.

[69] https://www.usatoday.com/story/news/health/2020/01/02/vaping-ban-fda-strikes-mint-and-fruit-flavored-products/2796299001/.

[70] *Id.*

Case# 2020-00621-0 - JUDGE,50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

cessation product at all."[71]   In the same article Atkins added, "[a]nything about health is not on our mind." The article notes that his colleagues in the interview winced.

122.    FDA regulations prohibit e-cigarette companies, including but not limited to JUUL from:

      a.    claiming their product is less harmful than other tobacco products without providing substantiation to the FDA and receiving FDA's authorization that their product is indeed a modified risk tobacco product; and

      b.    making cessation claims without first submitting a medicinal product application to FDA's Center for Drug and Evaluation Research and receiving authorization to do so.[72]

123.    Although JUUL markets its products as safer than a traditional cigarette and as a smoking cessation device, it has not received FDA approval to do so.

124.    In 2014, the FDA found no evidence that JUUL provides cessation benefits: "[t]here is no evidence to date that e-cigarettes are effective cessation devices. . . the number of cigarette smokers who actually quit tobacco product use with e- cigarettes is low."[73]

125.    Despite being in direct violation of FDA regulations, JUUL continues to market itself as a smoking cessation device. (*see Figure 21*).

---

[71] https://www.washingtonpost.com/news/to-your-health/wp/2018/07/30/e-cigarette-maker-juul- targeted-teens-with-false-claims-of-safety-lawsuit-claims/?utm_term=60d5bcb180db.

[72] 21 C.F.R. § 1100, 1140, and 1143 (2016).

[73] https://tobacco.ucsf.edu/sites/tobacco.ucsf.edu/files/u9/FDA-comment-2014-06-02%20Ecigarette%20marketing%20cessation%20messages%20deeming%20rule-1jy-8cgs-l1sq.pdf.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 21: Posted image from JUUL's "Switch" Marketing Campaign*

126.    The JUUL Switch marketing campaign further suggests that smoking traditional cigarettes and e-cigarettes are mutually exclusive and that purchasing a JUUL will help "switch" a smoker to a non-smoker. For example, as depicted in *Figure 21*, JUUL tweeted an image and quote from a JUUL user whose entire family smoked traditional tobacco products prior to "switching to JUUL" where he suggests he is permanently "staying."



*Figure 22: Posted image from JUUL's "Switch" Marketing Campaign*

46

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

127.    Despite JUUL's "Switch" campaign, multiple studies demonstrate no significant correlation with cessation of traditional cigarette smoking. [74]

128.    A 2019 study even found that minors who use e-cigarettes are *more* likely to become traditional tobacco cigarette smokers than their peers who do not use e-cigarettes:

>    a.    Eighth grade students who use e-cigarettes are ten times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes;

>    b.    Tenth grade students who use e-cigarettes are eight times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes; and

>    c.    Twelfth grade students who use e-cigarettes are six times more likely than their peers who do not use e-cigarettes to eventually smoke traditional cigarettes. [75]

**F.    Defendant EONSMOKE Capitalizes on JUUL's Extensive Marketing**

129.    EONSMOKE manufactures, markets, and distributes JUUL compatible pods in the very flavors JUUL stopped marketing in 2019. EONSMOKE uses both its website (www.EONSMOKE.com) and brick and mortar stores like, DELTA GAS, to distribute its products throughout Bucks County.

130.    According to an April 24, 2018, Wall Street Journal article, manufacturers of these pods were "piggyback[ing] on Juul's popularity." And that "EONSMOKE LLC sells nicotine pods with a 6% nicotine solution…[whose] Chief Executive Michael Tolmach said he expects sales of his Juul-compatible e-cigarettes to reach $30 million [in 2018]."[76]

131.    EONSMOKE's website makes clear to local retailers that its JUUL compatible

---

[74] Vickerman et al, 2013; Use of electronic cigarettes among state tobacco cessation quit line callers. Nicotine Tob Res, 15 (10): 1787-1791.

[75] https://www.hhs.gov/ash/oah/adolescent-development/substance- use/drugs/tobacco/trends/index.html.

[76] https://www.wsj.com/articles/fda-seeks-documents-from-maker-of-juul-e-cigarettes-popular-with-teens-1524591640?mod=nwsrl_metro_money&cx_refModule=nwsrl.

47

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

pods "offer high-profit margins in a vastly expanding growth market."[77] The website goes further enticing retailers that, "[d]istributing [the] EONSMOKE pods [is] just as stable and consistent of a cash flow as regular cigarettes for any convenience store that carries tobacco, vape stores, smoke shops, or specialty location."[78]

132.    EONSMOKE's website further boasts that it "introduces new products including flavored 6% salt nicotine pods & accessories quarterly to boost market share, brand awareness, and distributor/retailer profits."[79] Currently, EONSMOKE imports, sells, distributes, and/or markets to customers in the United States the following ENDS products and ENDS components and parts, including e-liquids:[80]

| 1. EONSMOKE Pods Blueberry 4% | 33. EONSMOKE Pods Watermelon 7% | 65. Cotton candy Salt Nicotine E-Liquid 60mg |
|---|---|---|
| 2. EONSMOKE Pods Blueberry 6% | 34. EONSMOKE Pods Wrangler 4% | 66. Donut cream Salt Nicotine E-Liquid 30mg |
| 3. EONSMOKE Pods Blueberry 7% | 35. EONSMOKE Pods Wrangler 6% | 67. Donut cream Salt Nicotine E-Liquid 60mg |
| 4. EONSMOKE Pods Caffe Latte 4% | 36. Lush ice 6% pods pack | 68. Gummy bear Salt Nicotine E-Liquid 30mg |
| 5. EONSMOKE Pods Caffe Latte pods 6% | 37. 4X Blue Blackberry 6.5% | 69. Gummy Bear Salt Nicotine E-Liquid 60mg |
| 6. EONSMOKE Pods Citrus 4% | 38. 4X Blue Raspberry 6.8% | 70. Mango pineapple sorbet Salt Nicotine E-Liquid 30mg |
| 7. EONSMOKE Pods Citrus 6% | 39. 4X Empty pod | 71. Mango pineapple sorbet Salt Nicotine E-Liquid 60mg |
| 8. EONSMOKE Pods Cool Mint 4% | 40. 4X Grape 6.5% | 72. Mint Salt Nicotine E-Liquid 30mg |
| 9. EONSMOKE Pods Cool Mint pods 6% | 41. 4X Green Apple 6.8% | 73. Mint Salt Nicotine E-Liquid 60mg |
| 10. EONSMOKE Pods Frost | 42. 4X Kiwi Strawberry 6.8% | 74. Raspberry ice lemonade |

---

[77] https://www.EONSMOKE.com/distribute-wholesale/.

[78] *Id.*

[79] *Id.*

[80] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/EONSMOKE-llc-592097-10242019.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | | |
|---|---|---|
| 4% | | Salt Nicotine E-Liquid 30mg |
| 11. EONSMOKE Pods Frost 6% | 43. 4X Mango Pineapple Guava 6.5% | 75. Raspberry ice lemonade Salt Nicotine E-Liquid 60mg |
| 12. EONSMOKE Pods Grape 4% | 44. 4X Multipack 6.5% | 76. Sour Gummy Worm Salt Nicotine E-Liquid 30mg |
| 13. EONSMOKE Pods Grape 6% | 45. 4X Peach Madness 6.8% | 77. Sour Gummy Worm Salt Nicotine E-Liquid 60mg |
| 14. EONSMOKE Pods Lush ice 7% | 46. 4X Raspberry Mint Lemonade 6.5% | 78. Strawberry Salt Nicotine E-Liquid 30mg |
| 15. EONSMOKE Pods Mango 4% | 47. 4X Sour Berry Belts 6.5% | 79. Strawberry Salt Nicotine E-Liquid 60mg |
| 16. EONSMOKE Pods Mango 6% | 48. 4X Sour Gummy 6.5% | 80. Watermelon Salt Nicotine E-Liquid 60mg |
| 17. EONSMOKE Pods Menthol 4% | 49. EONSMOKE Blue Raspberry Disposable 7% | 81. Watermelon Salt Nicotine E-Liquid 60mg |
| 18. EONSMOKE Pods Menthol 6% | 50. EONSMOKE Cubano Disposable 7% | 82. EONSMOKE Pod Device Black v2.0 |
| 19. EONSMOKE Pods Multipack 4% | 51. EONSMOKE Fresh Mint Disposable 7% | 83. EONSMOKE Pod Device Blue v2.0 |
| 20. EONSMOKE Pods Multipack 6% | 52. EONSMOKE Kiwi Strawberry Disposable 7% | 84. EONSMOKE Pod Device Gold Chrome v2.0 |
| 21. EONSMOKE Pods Pineapple 4% | 53. EONSMOKE Lush Ice Disposable 7% | 85. EONSMOKE Pod Device Gold v2.0 |
| 22. EONSMOKE Pods Pineapple 6% | 54. EONSMOKE Mango Disposable 7% | 86. EONSMOKE Pod Device Green v2.0 |
| 23. EONSMOKE Pods Pineapple 7% | 55. EONSMOKE Peach Rings Disposable 7% | 87. EONSMOKE Pod Device Pink v2.0 |
| 24. EONSMOKE Pods Pink Lemonade 4% | 56. EONSMOKE Sour Gummy Disposable 7% | 88. EONSMOKE Pod Device Purple v2.0 |
| 25. EONSMOKE Pods Pink Lemonade 6% | 57. EONSMOKE Sweet Grape Disposable 7% | 89. EONSMOKE Pod Device Rainbow Chrome v2.0 |
| 26. EONSMOKE Pods Silky Strawberry 4% | 58. Blue raspberry Salt Nicotine E-Liquid 30mg | 90. EONSMOKE Pod Device Red v2.0 |
| 27. EONSMOKE Pods Silky Strawberry 6% | 59. Blue raspberry Salt Nicotine E-Liquid 60mg | 91. EONSMOKE Pod Device Silver Shiny v2.0 |
| 28. EONSMOKE Pods Silky Strawberry 7% | 60. Candy Apple/Apple honey dew Salt Nicotine E-Liquid 30mg | 92. I Vape Aqua Unicorn (Color) |
| 29. EONSMOKE Pods Tobacco 4% | 61. Candy Apple/Apple honey dew | 93. I Vape Black (Color) |

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

|  | Salt Nicotine E-Liquid 60mg |  |
|---|---|---|
| 30. EONSMOKE Pods Tobacco pods 6% | 62. Cereal killer Salt Nicotine E-Liquid 30mg | 94. I Vape Blue Chrome (Color) |
| 31. EONSMOKE Pods Water melon 4% | 63. Cereal killer Salt Nicotine E-Liquid 60mg | 95. I Vape Purple Unicorn (Color) |
| 32. EONSMOKE Pods Watermelon 6% | 64. Cotton candy Salt Nicotine E-Liquid 30mg | 96. I Vape Red (Color) |

133.   EONSMOKE's website goes even further offering to fit any particular retailer's "choices in flavors, sizes, accessories, and marketing materials such as posters, flyers, plastic boards, pamphlets, etc." and that "EONSMOKE releases new marketing materials and ventures into more evolved methods of displaying our brands for our partners quarterly."[81]

134.   Following JUUL's marketing lead, EONSMOKE used various social media platforms including twitter to promote its copycat JUUL products aimed at youth users.   On September 8, 2018, Scott Disick, of reality TV fame, (*Figure 22* below) posted about EONSMOKE's flavored pods, writing that "they are unbelievable" and "completely compatible with [his] Juul" he concluded that his "favorite flavor is mango" and urged his followers to check out the EONSMOKE link.

---

[81] https://www.EONSMOKE.com/distribute-wholesale.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



*Figure 21: EONSMOKE Copying JUUL's Social Media Push*

135.    On October 24, 2019, the FDA issued a formal warning letter to EONSMOKE for

a number of violations, including failing to obtain appropriate FDA approvals, misleading

representations that EONSMOKE pods present "lower risk of tobacco-related disease or are less

harmful than one or more commercially marketed tobacco products and/or does not contain or is

free from a substance."[82]

136.    The FDA's letter further warned EONSMOKE that its pods are misbranded

because the company's "social media posts [made] on [its] behalf, in social media posts [it made]

---

[82] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-
letters/EONSMOKE-llc-592097-10242019.

51

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and on [its] website fail[] to include the required nicotine warning statement."[83]

137.    As depicted in *Figure 1*, despite all the public outcry, litigation, proposed legislation and agency regulation, EONSMOKE continues to market, manufacture, distribute and sell its youth flavored, knock-off JUUL pods both in its online retail store and brick and mortar stores in Bucks County.

### G.    The Effects of Defendants' Marketing and Sale of E-Cigarettes to Minors in Pennsylvania and Bucks County.

138.    There are currently 247 schools, including public, private, charter, and other non-traditional schools in Bucks County with more than 106,000 students enrolled. JUUL's extensive marketing efforts have exposed every Bucks County student to the potential for significant danger and harm.

139.    At one Bucks County High School, William Tennent High School in Warminster, Principal Dennis Best called it "one of the biggest concerns that every high school in America is dealing with right now" and that "Sometimes kids don't even know what they are ingesting."[84] Best, said the items are clearly marketed to younger ages and, "[t]eens see it as something that doesn't look like something that would hurt you, [a]nd they're wrong."[85]

140.    Central Bucks School District also hosted an information session on "Adolescent Vape Trends."   Likewise, vaping also was the primary topic of parent-teacher meetings in Pennsbury School District and the subject of district-wide letter circulated to parents in the Palisades School District.[86]

141.    Central Bucks West's head school nurse, Carol Klein, said many students said

---

[83] *Id.*

[84] https://www.theintell.com/news/20180319/new-trends-in-vaping-alarm-educators-and-parents.

[85] *Id.*

[86] *Id.*

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM; Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

they are buying the devices and oils online. And they don't come cheap, she said. A vaping pen cost one student $75, and he balked when she handed it over to security.[87]

142.     In some districts, including Central Bucks and Centennial, students get fined $50 and their devices are confiscated on the first infraction, the same penalty imposed if caught with tobacco products. Carol Klein found one "Juuling" pod in her office and turned it in to school security officials, who had discovered eight devices in one week.  One worry, Klein said, is that some students have seen other students "ghost inhaling" the substances, meaning they are holding the smoke in and swallowing it instead of exhaling. "They don't know what these chemicals are doing to their bodies, and the biggest challenge is not being able to detect an odor or a smoke," Klein said. "We are educating our staff and trying to stay one step ahead of them, but it is happening, and their use is increasing." One Bucks County 10th-grader explained that students use the devices for "the buzz" or "flavoring."[88]

143.     In March 2019, a bill was re-introduced in the Pennsylvania House of Representatives to broaden tobacco laws by including vaping products and allowing police to fine minors who attempt to purchase and/or are caught with vaping paraphernalia at school. The author of this legislation, Rep. Kathy Rapp, said her principal aim was to target stores to discourage them from selling vaping products to youth.[89]

144.     In September 2019, the Pennsylvania Senate responded to the growing vaping crisis among minors by passing legislation that would raise the minimum legal age to buy tobacco and vaping products from 18 years of age to 21.

---

[87] *Id.*

[88] *Id.*

[89] https://www.abc27.com/news/pennsylvania/pa-house-votes-to-ban-e-cigarette-juul-sales-to-minors/.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

145.     Despite acknowledging the current vaping crisis among minors, JUUL has not provided remediation.

**CAUSES OF ACTION**

**VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1 – 201-9.3**

146.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

147.     Defendants JUUL LABS, INC., EONSMOKE, LLC, GULF MART and LEHAL ASSOCIATES, INC. d/b/a DELTA GAS are "persons" as defined by 73 P.S. § 201-2(2).

148.     When the District Attorney has reason to believe that a person is using or is about to use any method, act or practice declared to be unlawful by 73 P.S. § 201-3, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice. 73 P.S. § 201-4.

149.     Whenever any court issues a permanent injunction to restrain and prevent violations of the UTPCPL, the court may direct that the Defendants restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of UTPCPL. 73 P.S. § 201-4.1.

150.     In any action brought by a District Attorney pursuant to 73 P.S. §201-4, if the court finds that a person, firm or corporation is willfully using or has willfully used a method, act or practice declared unlawful by the UTPCPL, the District Attorney, acting in the name of the Commonwealth of Pennsylvania, may recover a civil penalty of not exceeding one thousand dollars ($1,000) per violation, which civil penalty shall be in addition to other relief which may be granted under sections 4 and 4.14 of the UTPCPL. 73 P.S. § 201-8(b).

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

151.    While conducting trade or commerce in Pennsylvania, including Bucks County,

Defendants, collectively engaged in some or all of the following conduct constituting a deceptive

act or unfair practice declared unlawful under the UTPCPL:

    a.    Making deceptive fraud, false promises of material fact, and/or misrepresentations of material fact including, but not limited to, the following:

    i.    Misrepresenting JUUL products as non-addictive nicotine delivery systems or less-addictive nicotine delivery systems than traditional cigarettes;

    ii.    Misrepresenting the absorbed nicotine level for the use of JUUL products;

    iii.    Misrepresenting JUUL products as safer and less addictive than traditional cigarettes;

    iv.    Misrepresenting the health benefits of switching from using traditional cigarettes to JUUL products;

    v.    Misrepresenting the use of JUUL products as a way to quit using traditional cigarettes or to quit smoking in general;

    vi.    Misrepresenting the concentration of nicotine salt containing absolute nicotine concentration of at least 1.2% higher than as stated;

    vii.    Misrepresenting the nicotine content of JUUL pods by representing it as 5% strength;

    viii.    Misrepresenting that a JUUL pod contains as much nicotine as a pack of traditional cigarettes when the amount consumed via a JUUL pod is as much as twice as high as traditional cigarettes;

    ix.    Misrepresenting the nicotine content of JUUL pods as the same as a pack of traditional cigarettes when the nicotine content is closer to 24 cigarettes or at least 20% more than one pack;

    x.    Distributing or selling JUUL products to minors in Bucks County; and

    xi.    Continuing to knowingly manufacture, market, distribute, and/or sell nicotine pods flavored in such a fashion that they are desirable and intended for underage users.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

b.    Concealing and/or suppressing material facts by:

    i.    Failing to disclose the chemicals contained in JUUL products;

    ii.    Failing for years to disclose that JUUL products contain any addictive chemicals;

    iii.    Failing to disclose the adverse health effects of using JUUL products including, but not limited to, increased risk of heart disease and stroke, changes in brain functionality that lead to susceptibility to anxiety, depression and other addictions, decreased functionality of the endocrine system, heightened risk of cancer and negative effects on fertility;

    iv.    Failing to disclose that JUUL products deliver higher amounts of nicotine at a faster rate than a traditional cigarette;

    v.    Failing to disclose that because of JUUL's method of nicotine absorption, JUUL's nicotine solution is more addictive than traditional cigarettes even with lower concentrations;

    vi.    Failing to disclose that JUUL's nicotine salts increase the rate and magnitude of blood plasma nicotine compared to traditional cigarettes;

    vii.    Failing to disclose that JUUL's nicotine salt formulation delivers an exceptionally potent dose of nicotine;

    viii.    Failing to disclose that the efficiency with which JUUL devices deliver nicotine into the bloodstream increases its addictiveness; and

    ix.    Failing to disclose that non-smokers who then use JUUL products have a significant likelihood of using traditional cigarettes.

152.    Defendants' collective conduct, practices, and omissions alleged herein violate the UTPCPL, 73 P.S. § 201-2(4)(ii), (v), (iv), (v), (xiv), and/or (xxi).

153.    JUUL falsely and deceptively marketed, advertised, and sold JUUL products by misrepresenting their nicotine content, nicotine pharmacokinetics, and suitability as an alternative to cigarettes, and falsely implied that they were useful as a smoking or nicotine-use cessation device.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

154.    JUUL falsely and deceptively advertised its products in a manner that lured underage smokers and non-smokers into using JUUL products.

155.    In addition to JUUL acting in its own right, the Defendants' collectively committed deceptive acts and unfair practices with the intent that minors would rely upon the deceptive acts and unfair practices.

156.    The Defendants' deceptive acts and unfair practices occurred in the course of conduct involving trade or commerce.

157.    Defendants' deceptive acts and unfair practices have violated and continue to violate the deceptive and unfairness prong of the UTPCPL because they extend to transactions that are intended to result, or which have resulted, in the sale or distribution of goods or services to consumers.

158.    JUUL exposed minors throughout Bucks County to its long and pervasive marketing campaign and the false/misleading messages conveyed therein. In turn, Defendants GULF MART and LEHAL ASSOCIATES, INC. d/b/a DELTA GAS unfairly and illegally sold and/or distributed JUUL products to minors in Bucks County.

159.    As described above, JUUL's marketing images share common elements that are designed specifically to resonate with minors, including the use of young people and social inclusion to convey the idea that its products are popular and trendy.

160.    JUUL's conduct offends public policy, is immoral, unethical, oppressive, and unscrupulous.

161.    In same fashion, EONSMOKE's willingness to engage, and continue to engage, in the very behavior that led to the current vaping epidemic is similarly immoral, unethical, oppressive, and unscrupulous.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

162.    As a direct result of their foregoing acts and practices in violation of the UTPCPL, Defendants have received, and will continue to receive, income, profits, and other benefits, which they would not have received if they had not engaged in violations of the UTPCPL as alleged herein.

163.    As a direct result of the foregoing acts and practices in violation of the UTPCPL, the Commonwealth and its affected residents in Bucks County and other persons in interest have suffered substantial injury as alleged herein.

164.    As Defendants' foregoing acts and practices in violation of the UTPCPL were a substantial factor in the creation of this crisis, the District Attorney seeks all legal and equitable relief as allowed by law, including, *inter alia,* injunctive relief for Defendants' violations of the UTPCPL, as authorized under 73 P.S. § 201-4. Specifically, the District Attorney seeks an injunction requiring JUUL to cease all false or misleading promotional, marketing, and advertising activities and to inform the medical community and the public of the true risks of the use of JUUL.

165.    The District Attorney further seeks and by way of restoration and/or restitution an order directing Defendants to disgorge all monies acquired or retained by Defendants as a result of their violations of the UTPCPL.

166.    The Commonwealth is entitled to the Court's assessment against Defendants of an appropriate civil penalty for each violation of the UTPCPL by them. The monies demanded herein are in excess of $50,000, exclusive of interests and costs.

167.    Unless and until enjoined and restrained by order of this Court, Defendants will continue to cause injury to Bucks County, and the loss of money and property in that Defendants will continue to violate the laws of Pennsylvania, unless specifically ordered to comply.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### SECOND CAUSE OF ACTION
### <u>PUBLIC NUISANCE</u>

168.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

169.    The Restatement (Second) of Torts § 821(B), which has been adopted in Pennsylvania, defines a public nuisance as follows:

> (1) An unreasonable interference with a right common to the general public.
>
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
>> (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>>
>> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>>
>> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

170.    The Defendants have significantly and unreasonably interfered with the public's right to be free from avoidable injury, disease, sickness and addictive substances hazardous to health.  Defendants irreparably damaged the public health, and the general welfare of the residents of the Bucks County and have thereby wrongfully caused Bucks County to incur costs in support of the public health and welfare created by this misconduct.

171.    By the wrongful conduct alleged herein, including Defendants' marketing, distribution and sale of these e-cigarettes to the public without disclosure of information relating to the harmful health effects and addictive properties of their products, the Defendants' deliberate and intentional campaign to confuse and deceive the public concerning those addictive

Case# 2020-00621-0 - JUDGE.50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM. Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and harmful health effects, their distribution and marketing of harmful and addictive JUUL e-cigarettes, their manipulation of addictive nicotine levels in their products, and their marketing of e-cigarettes with the intent to induce minors to use them, Defendants have unreasonably endangered and injured the public health and interfered with the public's right to be free from the widespread distribution of substances causing disease and addiction and to be knowledgeable concerning the dangers of JUUL's e-cigarettes and EONSMOKE's nicotine flavor pods.

172.    Defendants' conduct unreasonably interferes with a public right, as demonstrated by *inter alia*, administrative regulation, ordinance or statute, including, but not limited to 18 Pa. C.S. §§ 6301, 6305 and 6306.1, regarding criminal penalties for furnishing tobacco products to minors and inducing minors to smoke.

173.    Unless the Defendants are enjoined and restrained from continuing their harmful activities and ordered to take affirmative steps to undo and abate the harm and confusion caused by Defendants' conduct, the unreasonable endangerment of the public health as described above will continue, for which Bucks County has no adequate remedy at law.

174.    The public nuisance created and perpetuated by the Defendants must be abated. Abatement is defined as "[t]he removal, stoppage or destruction by any reasonable means of the cause or constitution of a public nuisance." 11 Pa. C. S. A. § 127A01.

175.    As a direct and foreseeable result of Defendants' public nuisance, the County has paid and will continue to be required to pay for ongoing youth education to contradict the false and misleading marketing JUUL has engaged in, in addition to increased costs for school monitoring and Bucks County employee health insurance and other health care costs incurred because of e-cigarette related disease. Accordingly, the County is entitled to compensatory damages and injunctive relief in the form of an abatement.

60

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## PRAYER FOR RELIEF

WHEREFORE, the District Attorney of Bucks County, in the name of the Commonwealth, respectfully requests that the Court enter an Order granting the following relief:

A.      Declaring that JUUL's LABS, INC., EONSMOKE, LLC, GULF MART and LEHAL ASSOCIATES, INC. d/b/a DELTA GAS actions violated and continue to violate the UTPCPL;

B.      Awarding the greater of actual or compensatory damages according to proof;

C.      Awarding a monetary award, abatement, and equitable, and/or injunctive relief in the form of a court-enforced and supervised fund and corrective action, programs, communications and other appropriate relief to restore the public health, safety, peace, and honest marketplace in Bucks County, which will require, at least, the following:

1.      Funding and programs for health care services and programs associated with the early detection, ongoing testing, monitoring for detection of illness, disease process, or disease, diagnosis and treatment of resulting injuries and adverse health consequences of JUUL's conduct;

2.      Funding and programs to combat the abuse and diversion of the use of e-cigarettes by minors including tobacco education programs, cessation programs for users, and public information campaigns to warn users of health effects and addictive nature of the product;

3.      Funding, programs, studies, and research of the short and long-term effects of e-cigarette use in minors and the possible cures and treatments for the detrimental effects of using it;

4.      Funding and programs for accumulating and analyzing relevant medical and demographic information from underage users of e-cigarettes, including the results of testing and diagnosis;

5.      Funding and programs for monitoring and policing schools for the presence of e-cigarettes and flavored nicotine pods; and

6.      Funding law enforcement and other services and costs associated with the harm done by JUUL to the public health and safety in Bucks County.

D.      Awarding punitive damages;

E.      Awarding forfeiture, disgorgement, restitution, rescission, and divesture of JUUL's and EONSMOKE's profits from sales in Bucks County;

F.      Awarding further injunctive relief as to JUUL's and EONSMOKE's marketing, advertising, distribution and sale to ensure minors are not the intended recipient of JUUL's products or marketing;

G.      Awarding reasonable attorneys' fees and costs;

H.      Awarding pre and post-judgment interest to the extent allowable;

I.      Awarding such other injunctive and declaratory relief as is necessary; and

J.      Awarding such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

Dated:  January 29, 2020

Matthew D. Weintraub, District Attorney
**BUCKS COUNTY OFFICE
OF DISTRICT ATTORNEY**

Robert J. Mongeluzzi
Simon B. Paris*
Patrick Howard
Charles J. Kocher
**SALTZ MONGELUZZI BARRETT
& BENDESKY, P.C.**
120 Gibraltar Road, Ste. 218
Horsham, PA 19044

2020-00621-0 - JUDGE.50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts ire filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Daniel E. Gustafson*
Amanda M. Williams*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402

Edward A. Wallace*
**WEXLER WALLACE, LLP**
55 W Monroe St
Suite 3300
Chicago, IL 60603

Yvonne M. Flaherty*
**LOCKRIDGE, GRINDAL, NAUEN, P.L.L.P**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2159

Anthony D. Shapiro*
**HAGENS, BERMAN, SOBOL
SHAPIRO, LLP**
1301 Second Avenue
Suite 200
Seattle, WA 98101

Todd J. O'Malley
**O'MALLEY & LANGAN**
201 Franklin Avenue
Scranton, PA 18503

*Pro Hac Vice admission will be filed.*

## VERIFICATION

I, Matthew Weintraub, hereby verify that the facts in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements are subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsifications to authorities.

Dated: _12/16/19_

Matthew Weintraub

Case# 2020-00621-0 - JUDGE:50 Received at County of Bucks Prothonotary on 01/29/2020 10:10 AM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# BUCKS SHERIFF'S RETURN

Case #:    **2020-00621**
Commenced: **1/29/2020**
Caption:    **BUCKS COUNTY DISTRICT ATTORNEY**
           **vs.**
           **JUUL LABS INC**

## SERVICE REQUEST

Request #:    **11912 (1 of 2)**
Request Type:    **Civil Notice   COMPLAINT**
Entered:    **2/3/2020 by COB\drmoran**
Requested By:    **BUCKS COUNTY DISTRICT ATTORNEY**
           **100 N. MAIN STREET**
           **2ND FLOOR**
           **DOYLESTOWN, PA 18901**

Special Instructions:
Service To:    **LEHAL ASSOCIATES INC**

---

Zone:    **5**
Address:    **288 OLD YORK ROAD**
           **WARMINSTER, PA 18974**
Municipality: **Warminster TOWNSHIP**
           **Pick Up** on **2/3/2020 6:27 PM** by deputy **Deputy MaryEllen Kelly**

           **Served** on **2/5/2020 9:41 AM** by deputy **Deputy MaryEllen Kelly**

- **Person in Charge of Business (A)(2)(iii)**

Served To: **HARPEL**
Note: **WORKER SERVED - SAYS HARPEL IS HIS NAME FOR FIRST AND LAST NAME**

Case# 2020-00621-3 - JUDGE:50 Received at County of Bucks Prothonotary on 02/05/2020 12:15 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS
## OF BUCKS COUNTY, PENNSYLVANIA

THE DISTRICT ATTORNEY OF    :
BUCKS COUNTY,        :
Matthew D. Weintraub     :
Office of District Attorney     :
100 N. Main Street       :
2nd Floor         :
Doylestown, PA 18901     :
             :  **CIVIL CASE NO. : 2020-00621**
     Plaintiff,    :
  v.          :
             :
JUUL LABS, INC.,      :  **NON-JURY TRIAL**
560 20th Street       :
San Francisco, CA 94107    :
             :
and           :
             :
EONSMOKE, LLC      :
1500 Main Ave, Ste. 2     :
Clifton, NJ 07011-2120     :
             :
and           :
             :
GULF MART        :
530 East Broad Street     :
Quakertown, PA 18951     :
             :
and           :
             :
LEHAL ASSOCIATES, INC. D/B/A  :
DELTA GAS        :
288 Old York Road      :
Warminster, PA 18974     :
             :
     Defendants.

## AFFIDAVIT OF SERVICE

   I certify that on January 31, 2020, a true and correct copy of the Complaint and Notice to Defend in the above-captioned matter was served upon Eonsmoke, LLC via Federal Express, direct signature required.  Proof of delivery is attached hereto as Exhibit A.

Dated:  February 5, 2020        */s/ Patrick Howard*
                  Patrick Howard

# BUCKS SHERIFF'S RETURN

Case #:          **2020-00621**
Commenced: **1/29/2020**
Caption:         **BUCKS COUNTY DISTRICT ATTORNEY**
                 **vs.**
                 **JUUL LABS INC**

# SERVICE REQUEST

Request #:       **11913 (2 of 2)**
Request Type:    **Civil Notice   COMPLAINT**
Entered:         **2/3/2020 by COB\drmoran**
Requested By:    **BUCKS COUNTY DISTRICT ATTORNEY**
                 **100 N. MAIN STREET**
                 **2ND FLOOR**
                 **DOYLESTOWN, PA 18901**

Special Instructions:
Service To:      **GULF MART**

---

Zone:           **7**
Address:        **530 EAST BROAD STREET**
                **QUAKERTOWN, PA 18951**
Municipality:   **Quakertown BOROUGH**
                **Pick Up** on **2/5/2020 12:13 PM** by deputy **Deputy Scott Sciss**

                **Served** on **2/4/2020 2:14 PM** by deputy **Deputy Scott Sciss**

                - **Person in Charge of Business (A)(2)(iii)**

Case# 2020-00621-5 - JUDGE:50 Received at County of Bucks Prothonotary on 02/27/2020 10:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

McCREESH, McCREESH, and CANNON
BY: John J. McCreesh, IV
7053 Terminal Square
Upper Darby, PA 19082
Attorney ID # 68944
(610) 734-2160

|  |  |
|---|---|
| THE DISTRICT ATTORNEY OF | : |
| BUCKS COUNTY | : |
| vs. | : |
|  | : |
| JUUL LABS, Inc. | : |
| And | : |
| EONSMOKE, LLC | : |
| And | : |
| GULF MART | : |
| And | : |
| LEHAL ASSOCIATES d/b/a | : |
| DELTA GAS | : |

COURT OF COMMON PLEAS

BUCKS COUNTY

No. 2020-00621

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly enter my appearance on behalf of the defendant, GULF MART in the above-captioned matter.

/s/ John J. McCreesh, IV

John J. McCreesh, IV, Esq.
johniv@mccreeshlaw.
ID # 68944
Attorney for Defendant
Gulf Mart

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Bucks County District Attorney | Juul Labs, Inc., Eonsmoke, LLC, Gulf Mart, Lehal Associates, Inc. |

| | | |
|---|---|---|
| **(b)** County of Residence of First Listed Plaintiff   Bucks County<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   N/A; Delaware, California<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>See Exhibit A | Attorneys *(If Known)*<br>Sozi Tulante, Will Sachse, Nicolas Novy (215) 994-2529<br>Dechert LLP, 2929 Arch Street, Philadelphia, PA 19104 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | | PTF | DEF |
|---|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business In This State | | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | | ☐ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>& Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>Student Loans<br>(Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>Liability<br>☐ 320 Assault, Libel &<br>Slander<br>☐ 330 Federal Employers'<br>Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>Product Liability<br>☐ 360 Other Personal<br>Injury<br>☐ 362 Personal Injury -<br>Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>Product Liability<br>☐ 367 Health Care/<br>Pharmaceutical<br>Personal Injury<br>Product Liability<br>☐ 368 Asbestos Personal<br>Injury Product<br>Liability<br>**PERSONAL PROPERTY**<br>☒ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>Property Damage<br>☐ 385 Property Damage<br>Product Liability | ☐ 625 Drug Related Seizure<br>of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards<br>Act<br>☐ 720 Labor/Management<br>Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>or Defendant)<br>☐ 871 IRS—Third Party<br>26 USC 7609 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer<br>Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>Act/Review or Appeal of<br>Agency Decision<br>☐ 950 Constitutionality of<br>State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>Accommodations<br>☐ 445 Amer. w/Disabilities -<br>Employment<br>☐ 446 Amer. w/Disabilities -<br>Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>Conditions of<br>Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☒ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332, 1441, and 1446

Brief description of cause:
Consumer protection and public nuisance claims brought by Bucks County D.A.

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☐ Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S)<br>IF ANY | *(See instructions):*   JUDGE | DOCKET NUMBER |
|---|---|---|

| DATE<br>03/06/2020 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 100  N. Main Street, 2nd Floor, Doylestown, PA 18901

Address of Defendant: _____ 560 20th Street, San Francisco, CA 94107

Place of Accident, Incident or Transaction: _____ Commonwealth of Pennsylvania

---

**RELATED CASE, IF ANY:**

Case Number: 2:20-cv-00402-MSG     Judge: Honorable Mitchell S. Goldberg     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/06/2020     _____Attorney-at-Law / Pro Se Plaintiff_____     319499
Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

*A.   Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
(Please specify): _____

*B.   Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☑ 9. All other Diversity Cases
*(Please specify):* PA UTPCPL and Public Nuisance Claims

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Nicolas A. Novy , counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 03/06/2020     _____Attorney-at-Law / Pro Se Plaintiff_____     319499
Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 100  N. Main Street, 2nd Floor, Doylestown, PA 18901 _____

Address of Defendant: _____ 560 20th Street, San Francisco, CA 94107 _____

Place of Accident, Incident or Transaction: _____ Commonwealth of Pennsylvania _____

---

*RELATED CASE, IF ANY:*

Case Number: 2:20-cv-00402-MSG      Judge: Honorable Mitchell S. Goldberg      Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ **is** / ☐ **is not**  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/06/2020 _____      _____ *Attorney-at-Law / Pro Se Plaintiff*      319499 _____ *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

| | |
|---|---|
| **A.**    *Federal Question Cases:* | **B.**    *Diversity Jurisdiction Cases:* |

**A.    *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.    *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☑ 9. All other Diversity Cases
    *(Please specify):* PA UTPCPL and Public Nuisance Claims

---

ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Nicolas A. Novy _____, counsel of record *or pro se* plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 03/06/2020 _____      _____ *Attorney-at-Law / Pro Se Plaintiff*      319499 _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| The District Attorney of Bucks County | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Juul Labs, Inc., Eonsmoke, LLC, Gulf Mart, | : | |
| Lehal Associates, Inc. (D/B/A Delta Gas) | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus -- Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)       (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ( )

| 03/06/2020 | Nicolas A. Novy | Defendant Juul Labs, Inc. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-994-2529 | 215-994-2222 | nicolas.novy@dechert.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02